[No. D021809. Fourth Dist., Div. One. Jan. 26, 1996.]

HOME DEPOT, U.S.A., INC., Plaintiff and Respondent, v.
CONTRACTORS' STATE LICENSE BOARD, Defendant and Appellant.

1594

## COUNSEL

Daniel E. Lungren, Attorney General, Robert L. Mukai, Chief Assistant Attorney General, Ron Russo, Assistant Attorney General, Anthony M. Summers and Samuel K. Hammond, Deputy Attorneys General, for Defendant and Appellant.

Bartlett & Kirch, Bradley A. Bartlett and Jacques J. Kirch for Plaintiff and Respondent.

## OPINION

**HALLER, J.**—At issue here is the validity of a regulation adopted by the Contractors' State License Board (Board) prohibiting a licensed general building contractor from taking a contract or subcontract unless (1) the contract involves at least three unrelated building trades or crafts, or (2) the contractor holds the required specialty license. The regulation is title 16, California Code of Regulations, section 834, subdivision (b),[1] and, for the reasons explained below, we conclude it is invalid under these circumstances.

---

[1]For the sake of convenience, we shall refer to the regulation as rule 834(b).

FACTUAL AND PROCEDURAL BACKGROUND

Home Depot, U.S.A., Inc., which is headquarted in Atlanta, Georgia, sells home improvement products in more than 200 stores nationwide, including 64 stores in California at the time of the administrative proceedings here.

In 1990, Home Depot hired Peter Smith to institute a "We can install it" program on a test basis in the San Diego stores. Under the program, Home Depot hires specialty contractors to perform installation of certain products it sells if the customer so desires. Home Depot does not undertake the installation work. Home Depot screens the specialty contractors in the program to make sure they are properly licensed and carry appropriate insurance.

Before the program began, Home Depot inquired with Board's Sacramento office about license requirements and was told that a class B general contractor's license would be necessary. Since September 12, 1990, Home Depot has been licensed in California as a class B general contractor. Peter Smith is the responsible managing employee on the license.

In 1991, Home Depot's installation services included interior and exterior doors, floor and wall coverings, window treatments, plumbing fixtures, garage door openers, electrical, kitchen cabinets, storage sheds and full kitchen and bath remodels. Approximately 65 percent of Home Depot's installation jobs in 1991 involved three or more trades.

Home Depot does not consider itself to be in the business of a general contractor. Home Depot represents to its customers that through its "We can install it" program Home Depot is in control of the installation process and considers itself responsible to the customer for both the product and the installation.

On October 23, 1991, Marian Naylor purchased a water heater from a Home Depot store in San Diego and entered into a written agreement with Home Depot for installation of the water heater. Naylor paid Home Depot $269.89 for the water heater and installation. Home Depot arranged for Beatty Service, a licensed plumbing contractor, to install the water heater; the installation took place on October 25, 1991. Beatty Service failed to obtain a permit for the installation of the water heater.

Naylor made a complaint to Board through her son, who works with a plumbing company that competes with Home Depot.

On April 23, 1992, Board filed citation No. 2913218 against Home Depot for failing to obtain a permit before installation of the water heater (Bus. &

Prof. Code, § 7110) and for acting as a plumbing contractor (C-36 specialty license) while licensed only as a general building contractor. A permit was subsequently obtained for the Naylor water heater.

Also on April 23, 1992, Board filed citation Nos. 2913216 and 2913217 in connection with advertising by Home Depot for floor covering installation without the proper specialty contracting license in violation of Business and Professions Code section 7026.7, subdivision (a).[2] These citations stemmed from complaints made by competitors of Home Depot.

A hearing on the citations was conducted before an administrative law judge on November 23 and 24, 1992. On February 22, 1993, the administrative law judge issued a proposed decision affirming Citation Nos. 2913216 and 2913218 and dismissing Citation No. 2913217. On March 4, 1993, the registrar adopted the administrative law judge's proposed decision and set April 3, 1993, as the effective date of the decisions on the citations.

On July 19, 1993, Home Depot filed a petition for writ of mandate and declaratory relief.

On July 26, 1994, judgment was entered granting a peremptory writ of mandate commanding Board to set aside citation Nos. 2913216 and 2913218 as invalid and unenforceable and declaring rule 834(b) invalid and void.

On August 17, 1994, Board filed this appeal of the judgment.

DISCUSSION

I. *Overview of Statutory Scheme*

The Contractors' State License Law (Law) (§ 7000 et seq.) provides a comprehensive scheme governing contractors [3] doing business in California. The Law is administered by the Board, which is composed of thirteen

---

[2] All statutory references are to the Business and Professions Code unless otherwise specified. Section 7026.7 was renumbered and is currently found under section 7027.1 (Stats. 1991, ch. 1160, § 13).

[3] A contractor is defined as follows: "The term contractor . . . is synonymous with the term 'builder' and . . . is any person, who undertakes to . . . construct, alter, repair, add to . . . any building, highway, road, parking facility, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structures or works in connection therewith . . . . The term contractor includes subcontractor and specialty contractor." (§ 7026.) The term "person," as used in the statute, includes an individual, a firm, copartnership, corporation, association or other organization. (§ 7025.)

members—seven public members and six members who are contractors subject to the Law, including one member who belongs to a labor organization representing the building trades. (§§ 7000.5, 7001, 7002.) The Board is given general authority to adopt rules and regulations reasonably necessary to carry out the provisions of the Law. (§ 7008.)

■ The Law reflects a strong public policy in favor of protecting the public against unscrupulous and incompetent contracting work. (*Vallejo Development Co.* v. *Beck Development Co.* (1994) 24 Cal.App.4th 929, 938 [29 Cal.Rptr.2d 669].) As our Supreme Court recently noted: "The purpose of the licensing law is to protect the public from incompetence and dishonesty in those who provide building and construction services. [Citation.] The licensing requirements provide minimal assurance that all persons offering such services in California have the requisite skill and character, understand applicable local laws and codes, and know the rudiments of administering a contracting business." (*Hydrotech Systems, Ltd.* v. *Oasis Waterpark* (1991) 52 Cal.3d 988, 995 [277 Cal.Rptr. 517, 803 P.2d 370].)

This case involves the statutory classifications of contractors and the interaction of the classifications with rule 834(b), which Board promulgated pursuant to its rulemaking authority. The pertinent statutory provisions are as follows:

Section 7055, which provides:

"For the purpose of classification, the contracting business includes any or all of the following branches:

"(a) General engineering contracting.

"(b) General building contracting.

"(c) Specialty contracting."[4]

Section 7057, which provides in pertinent part: "A general building contractor is a contractor whose principal contracting business is in connection with any structure built, being built, or to be built, for the support, shelter and enclosure of persons, animals, chattels or movable property of any kind, requiring in its construction the use of more than two unrelated

---

[4]Section 7056, which defines general engineering contractors as those contractors whose business involves fixed works requiring specialized engineering knowledge and skill, such as highways, bridges and dams, is not pertinent to this appeal.

building trades or crafts, or to do or superintend the whole or any part thereof."

Section 7058, which provides in pertinent part: "(a) A specialty contractor is a contractor whose operations as such are the performance of construction work requiring special skill and whose principal contracting business involves the use of specialized building trades or crafts."

Section 7059, which provides in pertinent part:

"(a) The board may adopt reasonably necessary rules and regulations to effect the classification of contractors in a manner consistent with established usage and procedure as found in the construction business, and may limit the field and scope of the operations of a licensed contractor to those in which he or she is classified and qualified to engage, as defined by Sections 7055, 7056, 7057 and 7058. A licensee may make application for classification and be classified in more than one classification if the licensee meets the qualifications prescribed by the board for such additional classification or classifications. The application shall be in a form as prescribed by the registrar and shall be accompanied by the application fee fixed by this chapter. No license fee shall be charged for an additional classification or classifications.

"Nothing contained in this section shall prohibit a specialty contractor from taking and executing a contract involving the use of two or more crafts or trades, if the performance of the work in the crafts or trades, other than in which he or she is licensed, is incidental and supplemental to the performance of the work in the craft for which the specialty contractor is licensed."

Rule 834(b) provides: "A licensee classified as a general building contractor, as defined in Section 7057 of the Code, shall not take a prime contract (excluding framing and carpentry) unless it requires at least three unrelated building trades or crafts, or unless he/she holds the required specialty license(s). A general building contractor shall not take a subcontract (excluding framing or carpentry) involving less than three unrelated trades or crafts unless he/she holds the required specialty license(s)."

## II. *Standard of Review*

The interpretation of administrative regulations, as well as statutes, presents questions of law. (*Delta Air Lines, Inc.* v. *State Bd. of Equalization* (1989) 214 Cal.App.3d 518, 525 [262 Cal.Rptr. 803].) These questions of law are subject to independent review on appeal. (*Board of Retirement* v. *Lewis* (1990) 217 Cal.App.3d 956, 964 [266 Cal.Rptr. 225].)

### III.  *Statutory Construction*

The linchpin of Board's defense of rule 834(b) is Board's contention that the Legislature intended general building contractors to be limited to projects that involve more than two building trades or crafts when it enacted section 7057. Accordingly, Board urges, rule 834(b) merely carries out the Legislature's intent. We disagree, finding Board's contention regarding legislative intent to be erroneous.

We are cognizant of certain rules of construction that come into play when dealing with administrative agencies that are charged with implementing statutes.  For example, in determining the proper interpretation of a statute and the validity of an administrative regulation, a court should give the administrative agency's construction great weight; a court will not substitute its judgment for that of the administrative agency if there appears to be a reasonable basis for the agency's construction. (*Ontario Community Foundations, Inc.* v. *State Bd. of Equalization* (1984) 35 Cal.3d 811, 816 [201 Cal.Rptr. 165, 678 P.2d 378].) However, "[e]ven though the court will give great weight to an administrative agency's interpretation of its own regulations and the statutes under which it operates, these are questions of law which the court must ultimately resolve." (*Robinson* v. *Fair Employment & Housing Com.* (1992) 2 Cal.4th 226, 235, fn. 6 [5 Cal.Rptr.2d 782, 825 P.2d 767].) "Such administrative interpretation . . . cannot prevail if erroneous or unauthorized by the applicable laws." (*People* v. *Vis* (1966) 243 Cal.App.2d 549, 557 [52 Cal.Rptr. 527].)

A regulation cannot restrict or enlarge the scope of a statute. (Gov. Code, §§ 11342.1, 11342.2.) "Although the board was authorized to adopt rules and regulations 'to effect the classification of contractors,' it is the statute which defines a contractor and an administrative ruling contrary to the terms thereof would be ineffective." (*People* v. *Vis, supra,* 243 Cal.App.2d at p. 557.)

Thus, it is incumbent upon us to begin by interpreting the relevant statute—section 7057, which defines general building contractor.

Toward this end, we reiterate certain well-established rules of statutory interpretation. A court's overriding purpose in construing a statute is to ascertain legislative intent and to give the statute a reasonable construction conforming to that intent. (*Massey* v. *Workers' Comp. Appeals Bd.* (1993) 5 Cal.4th 674, 681 [20 Cal.Rptr.2d 825, 854 P.2d 117].) In interpreting a statute to determine legislative intent, a court looks first to the words of the statute and gives them their usual and ordinary meaning. (*Lennane* v.

*Franchise Tax Bd.* (1994) 9 Cal.4th 263, 268 [36 Cal.Rptr.2d 563, 885 P.2d 976].) Statutes must be given a fair and reasonable interpretation, with due regard to the language used and the purpose sought to be accomplished. (*Cedars of Lebanon Hosp.* v. *County of L.A.* (1950) 35 Cal.2d 729, 734-735 [221 P.2d 31, 15 A.L.R.2d 1045].)

Section 7057 sets forth the Legislature's definition of general building contractor, one of three classifications of contractors established in section 7055. Under section 7057, a general building contractor is "a contractor whose *principal* contracting business is in connection with any structure . . . requiring in its construction the use of more than two unrelated building trades or crafts . . . ." (Italics added.) Contrary to Board's position, this statutory definition does not limit a general building contractor's operation *solely* to contracts involving more than two unrelated building trades or crafts. If the Legislature intended to impose such a limitation it would have done so. The language of section 7057 allows a general building contractor to accept contracts that require the use of two or fewer building trades or crafts and still be acting within this license classification so long as the contractor's *principal* contracting business is in connection with structures that require the use of two or more unrelated building trades or crafts in their construction.

This interpretation follows under principles of statutory construction as well as rudimentary grammar rules: the phrase "the use of more than two unrelated building trades or crafts" applies to "its construction," with "its" referring to structure. As stated in *County of Los Angeles* v. *Graves* (1930) 210 Cal. 21, 26 [290 P. 444]: "[I]t is a rule of grammatical construction and one of the simplest canons of statutory construction that a limiting clause is to be confined to the last antecedent, unless the context or the evident meaning of the statute requires a different construction." When read in its entirety, the language of section 7057 clearly provides that those contractors who principally work on structures that involve more than two unrelated building trades or crafts are to be classified as general building contractors. Nothing in the language of section 7057 requires a general building contractor to absolutely limit his or her contracting work to projects involving more than two unrelated building trades or crafts.

Therefore, to the extent Board argues the language of section 7057 "requires that a general building contractor take only construction contracts which require two or more unrelated trades to perform," Board is mistaken. Board's interpretation that the "restrictive phrase 'more than two unrelated trades or crafts' . . . describes the type of contract that the general building

contractor can take" does not follow grammatically or logically. Such an interpretation ignores the word "its." ■ Significance should be given, if possible, to every word of an act, and a construction that renders a word surplusage should be avoided. (*Delaney* v. *Superior Court* (1990) 50 Cal.3d 785, 798-799 [268 Cal.Rptr. 753, 789 P.2d 934].) ■ Under ordinary rules of grammar, which must be applied unless they lead to an absurd result (*Busching* v. *Superior Court* (1974) 12 Cal.3d 44, 52 [115 Cal.Rptr. 241, 524 P.2d 369]), the phrase "the use of more than two unrelated building trades or crafts" would refer to "its construction," which in turn refers to "structure[s]" that make up the contractor's principal business.

Board ignores the fact section 7057 defines a general building contractor in terms of the contractor's principal business. Nothing in the statutory language limits general building contractors to projects that require more than two building trades or crafts. ■ An intention to legislate by implication is not to be presumed. (*Krater* v. *City of Los Angeles* (1982) 130 Cal.App.3d 839, 845 [181 Cal.Rptr. 923].) In construing a statute, we do not insert words into it as this would "violate the cardinal rule that courts may not add provisions to a statute. [Citations.]" (*Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 827 [4 Cal.Rptr.2d 615, 823 P.2d 1216].) Nor are we permitted to rewrite the statute to conform to an assumed intent that does not appear from its plain language. (*Napa Valley Wine Train, Inc.* v. *Public Utilities Com.* (1990) 50 Cal.3d 370, 381 [267 Cal.Rptr. 569, 787 P.2d 976].)

■ In sum, we find no support for Board's position that it was the intent of the Legislature in section 7057 to limit general building contractors to contracts requiring more than two building trades or crafts.[5]

---

[5]Both Board and Home Depot urge that we consider the legislative history of section 7057. While the legislative history of a statute is helpful in determining legislative intent, there is no need to resort to such extrinsic aids if the language of the statute is clear and unambiguous. (*Delaney* v. *Superior Court*, *supra*, 50 Cal.3d at pp. 798, 800.)

In any event, nothing in the legislative history of section 7057 alters our conclusion the Legislature did not intend to restrict general building contractors to projects involving more than two building trades or crafts.

Section 7057 was enacted in 1945. (Stats. 1945, ch. 1159, § 3, p. 2207.) The statute has never been amended.

The Legislature had enacted the state's first law providing for the registration of contractors in 1929. (Stats. 1929, ch. 791, §§ 1-14, pp. 1591-1595.) Among other things, the law defined the term "contractor"; however, the law did not break down the term into categories. (Stats. 1929, ch. 791, § 3, p. 1592.) In 1935, the Legislature amended this uncodified law to include the three categories: general engineering contractor; general building contractor; and specialty contractor. (Stats. 1935, ch. 816, § 4, pp. 2217-2218.) The uncodified law was subsequently amended one more time; this amendment did not involve any substantive changes relevant here. (Stats. 1937, ch. 499, § 3, pp. 1477-1478.) In 1939, the Legislature codified the

## IV. *Is Rule 834(b) a Valid Exercise of Board's Authority?*

Board contends rule 834(b)[6] is a valid exercise of Board's rule-making authority because the regulation is (1) consistent with section 7057 and (2) necessary to effectuate the Legislature's intent under the classification scheme. We disagree on both points.

To determine whether rule 834(b) falls within Board's delegated power, we must decide whether Board reasonably interpreted the legislative mandate. (*Hartzell* v. *Connell* (1984) 35 Cal.3d 899, 914 [201 Cal.Rptr. 601, 679 P.2d 35].) As explained above, to the extent that Board has adopted the position that the legislative mandate was to restrict general building contractors to projects requiring more than two building trades or crafts, we reject Board's position.

---

contractors licensing law by adding sections 7000 to 7139, including section 7055 et seq., to the Business and Professions Code. (Stats. 1939, ch. 37, § 1, pp. 381-395.) In 1941, the Legislature repealed sections 7055, 7056, 7057 and 7058, thereby eliminating the classification system and the three categories of contractors. (Stats. 1941, ch. 971, §§ 5-8, pp. 2603-2604.) The 1941 legislation amended section 7059 to give the registrar, with Board approval, authority to adopt "regulations necessary to effect the classification of contractors in a manner consistent with established usage and procedure as found in the construction business . . . ." (Stats. 1941, ch. 971, § 9, p. 2604.) In 1945, the Legislature reenacted the classification system (§ 7055) with the three categories—general engineering contractor (§ 7056), general building contractor (§ 7057) and specialty contractor (§ 7058)—and amended section 7059 to narrow the rulemaking authority of the registrar and Board. (Stats. 1945, ch. 1159, §§ 1-5, pp. 2207-2208.)

[6]Both Board and Home Depot have supplied this court, as well as the trial court, with what appears to be the available administrative history of rule 834(b), which was first promulgated in 1947. While the supplied documents have some historical interest, they are largely inconclusive and shed little light on the contemporary issue confronting us. The most salient point we can glean from the documents is that Board has consistently maintained since 1947 that general building contractors can only take contracts that involve at least three building trades or crafts. Board embraced this position and adopted rule 760, subdivision (b) (the predecessor to rule 834(b)) in 1947 even though twice in the preceding eight years, the Attorney General had advised Board that the Law did not so restrict general contractors. (See Ops.Cal.Atty.Gen. No. 1-NS2182 (Dec. 13, 1939); 3 Ops.Cal.Atty.Gen. 311, 313 (1944).) In pertinent part, the 1944 opinion by the Attorney General stated: "There is nothing in the contractors' license law which states the manner in which a contractor must accomplish the work; i.e., there is nothing to prevent him from doing all of the work himself, or of hiring, or contracting with, specialty contractors to do a certain part of the work. Therefore . . . the holder of a general contractor's license may accept a contract covering only one particular field of endeavor, and he need not secure an additional supplemental specialty classification covering a particular field, and he may do the entire work himself if he desires." (3 Ops.Cal.Atty.Gen., *op. cit. supra*, at p. 313; see also *Martin* v. *Mitchell Cement Contracting Co.* (1977) 74 Cal.App.3d 15, 19 [140 Cal.Rptr. 424], [quoting 1944 Attorney General opinion with approval in dicta].)

A regulation adopted by an administrative agency "must be consistent, not in conflict with the statute, and reasonably necessary to effectuate its purpose." (*Mooney* v. *Pickett* (1971) 4 Cal.3d 669, 679 [94 Cal.Rptr. 279, 483 P.2d 1231]; see also Gov. Code, § 11342.2.)

## A.   Is Rule 834(b) Consistent With Section 7057?

Board's arguments that rule 834(b) is consistent and not in conflict with section 7057 are unavailing because they are based on its interpretation of section 7057 as defining a general building contractor as one who takes contracts involving more than two building trades or crafts. As we have repeatedly emphasized, section 7057 does not contain such a restrictive definition; it is rule 834(b) that adds this restriction. Moreover, under section 7059, Board, in exercising its rulemaking authority, is charged with using the statutory definition contained in section 7057 as well as those used in the other classification statutes. " 'Administrative regulations that alter or amend the statute or enlarge or impair its scope are void and courts not only may, but it is their obligation to[,] strike down such regulations. [Citation.]' " (*Woods* v. *Superior Court* (1981) 28 Cal.3d 668, 679 [170 Cal.Rptr. 484, 620 P.2d 1032].)

Board notes that the Legislature has never indicated any displeasure with rule 834(b), which was first promulgated in 1947. (See fn. 6, *ante*.) Board argues "the [L]egislature's tacit approval" of rule 834(b), as evidenced by the lack of any amendments to section 7057 for almost 50 years (see fn. 5, *ante*), signals legislative endorsement that Board's interpretation is consistent with the statute and deserves judicial deference.

We are not persuaded the Legislature's lack of action with respect to section 7057 is controlling. As the Supreme Court noted in *Dyna-Med, Inc.* v. *Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1396 [241 Cal.Rptr. 67, 743 P.2d 1323]: "The Legislature's failure to modify the statute so as to require an interpretation contrary to the commission's construction is not determinative: '[A]n erroneous administrative construction does not govern the interpretation of a statute, even though the statute is subsequently reenacted without change. [Citations]' [Citation.]" Notwithstanding presumptions that the Legislature is cognizant of administrative interpretations of long-standing duration (see *Moore* v. *California State Bd. of Accountancy* (1992) 2 Cal.4th 999, 1017-1018 [9 Cal.Rptr.2d 358, 831 P.2d 798]), there has been no showing in this record that the Legislature has in fact been aware of rule 834(b) and its restriction on general building contractors to contracts involving more than two building trades or crafts.

Accordingly, here we decline to equate legislative inaction with legislative approval.

### B. *Is Rule 834(b) Necessary to Effectuate Legislature's Intent?*

Board argues rule 834(b) is necessary to effectuate the Legislature's intent under the classification scheme because it accomplishes three purposes: (1) ensures construction work is performed by competent contractors; (2) assures the survival of the specialty license class of contractors; and (3) provides clear information about the role of general contractors in the construction industry. We find this argument unpersuasive.

To the extent that Board recognizes that the foremost purpose of the Law is to protect the public against unscrupulous and/or incompetent contractors, we heartily agree. The courts of this state have long emphasized that the Law "was enacted for the safety and protection of the public against imposition by persons inexperienced in contracting work, and for the prevention of fraudulent acts by contractors resulting in loss to subcontractors, materialmen, employees, and owners of structures." (*Fraenkel* v. *Bank of America* (1953) 40 Cal.2d 845, 848 [256 P.2d 569].) "Once a particular legislative intent has been ascertained, it must be given effect." (*Friends of Mammoth* v. *Board of Supervisors* (1972) 8 Cal.3d 247, 259 [104 Cal.Rptr. 761, 502 P.2d 1049], criticized on other grounds in *Kowis* v. *Howard* (1992) 3 Cal.4th 888, 896 [12 Cal.Rptr.2d 728, 838 P.2d 250].)

However, the prohibition contained in rule 834(b) against general building contractors contracting or subcontracting for projects that require fewer than three unrelated building trades or crafts unless the contractor holds the required specialty license(s) is not reasonably necessary to effectuate this purpose. Rule 834(b), as currently written, would allow a general building contractor to contract or subcontract a project involving three or more building trades or crafts without the required specialty licenses. Here, for instance, as Board has conceded, if Naylor had contracted with Home Depot to construct her house, or for any other project involving at least three unrelated building trades, Home Depot would be in compliance with rule 834(b) by virtue of its general building contractor's license regardless of whether Home Depot hired specialty licensees to perform the various building trades involved in the project. We fail to see how rule 834(b) would protect the public against shoddy workmanship under such a scenario. In other words, rule 834(b) purports to require specialty licensed contractors perform the work of their particular trades or crafts to assure quality workmanship, but this protection for the public applies only to small projects and not larger ones that involve more than two trades or crafts.

Moreover, here Home Depot's "We can install it" program uses only licensed specialty contractors to perform the work involving specialty trades or crafts, thus satisfying the goal of protecting the public against shoddy workmanship. As applied here, rule 834(b) is not necessary to effectuate this public policy goal.

The second purpose Board cites is protecting specialty contractors against competition from general building contractors. If this were indeed a goal of the Legislature in enacting the classification scheme—and we are not expressing an opinion on this issue—it certainly was not the uppermost goal; protection of the public has long been viewed as the first and foremost purpose of the law. (See, e.g., *Fraenkel* v. *Bank of America, supra,* 40 Cal.2d at p. 848.) Under rule 834(b), however, Board has given protection of specialty contractors the highest priority, a hierarchy that is not in keeping with the legislative intent.[7] Moreover, as applied here, the irony is that Home Depot's "We can install it" program uses licensed specialty contractors; hence, the evil that Board has sought to prevent in rule 834(b)—specialty contractors losing jobs to unlicensed persons—is not presented by Home Depot's program. Indeed, because Home Depot itself does not perform the work, the "We can install it" program does not present a scenario in which a general building contractor is taking away contracting jobs from specialty contractors. By hiring specialty contractors to do the work, Home Depot is providing these contractors with work, not eliminating it.

The third purpose Board cites to justify rule 834(b)—providing clear information about the role of general building contractors in the construction industry—deserves little comment. Rule 834(b) does not bring clarity to the statutory classification scheme; it imposes an added restriction on general building contractors that offers protection to the public on small projects but not on larger ones. As to Board's claim that rule 834(b) reflects the custom and practice in the construction industry, there is nothing in this record to substantiate the claim. Under these circumstances, we fail to see how this

[7]We note at one point Board specifically recognized the protection of the public as its foremost policy goal. A specific provision contained in the former Administrative Code exemplifying this policy read as follows: "The board interprets the primary intent of the Legislature in enacting Chapter 9, Division 3 of the Business and Professions Code to be the protection of the health, safety, and general welfare of all those persons dealing with persons engaged in the building contracting vocation, and the affording to such persons of an effective and practical protection against the incompetent, inexperienced, unlawful and fraudulent acts of building contractors with whom they contract. All rules, regulations or orders adopted by the Board or its registrar shall be interpreted and construed in light of the policies announced herein." (Former Cal. Admin. Code, tit. 16, § 701.)

This provision was repealed in 1983 (Register 83, No. 22); no similar statement of purpose of the Law exists in Board's current regulations.

regulation sheds salutary light for any interested party on the practices of the construction industry.

In sum, rule 834(b) is inconsistent with section 7057 and unnecessary to reasonably effectuate the legislative purpose under the circumstances presented here. Accordingly, we conclude rule 834(b) goes beyond Board's rulemaking authority and is invalid as applied here.

### DISPOSITION

Affirmed.

Benke, Acting P. J., and McDonald, J., concurred.