[No. D020525. Fourth Dist., Div. One. Feb. 19, 1997.]

HAZARD, JR. ENTERPRISES, INC., Plaintiff and Appellant, v.
INSURANCE COMPANY OF THE WEST et al., Defendants and
Respondents.

**COUNSEL**

Hillyer & Irwin, Norman R. Allenby, Robert P. Allenby and Steven S. Owen for Plaintiff and Appellant.

Keith R. Kelley, in pro. per., Brown and Pearson, Chrissa N. Corday, Joan L. Pearson, Floyd R. Brown, Robert G. Dyer, Mark Stutzman, Clark & Gumpel and Corinne D. Clark for Defendants and Respondents.

## OPINION

NARES, J.—At issue here is whether Hazard, Jr. Enterprises, Inc. (Hazard),[1] a validly licensed general building contractor, can recover under a contract with Valley Parkway[2] for commercial subdivision site work. The trial court ruled Hazard could not maintain this action because the work required a general engineering contractor's license. We conclude Hazard was properly licensed and accordingly, we reverse and remand.

### FACTUAL AND PROCEDURAL BACKGROUND

Hazard was licensed as a general building contractor in 1946, and from the late 1950's built large commercial projects such as supermarkets, shopping centers and hotels. In conjunction with construction activity, Hazard performed more than $100 million worth of site work, including constructing driveways and sidewalks and doing grading. Hazard's contracts usually included both site preparation and building construction, but occasionally only site work was involved.

In 1989, Valley Parkway hired Hazard to ready an Escondido site for commercial subdivision construction. The contract included no building construction, but was confined to site preparation, including surveying, cutting and filling, soils testing, rough and fine grading, relocating underground utilities and installing canyon drains, retaining walls, fencing, barricades, landscaping, irrigation, street lights, parking stripes, signs, curbs, gutters and sidewalks. Valley Parkway paid Hazard more than the original contract amount of $5,147,875, but balked at paying Hazard's change order claims of approximately $600,000.[3] This lawsuit for breach of contract and other causes of action resulted.

In answering the complaint, Valley Parkway denied Hazard was properly licensed. Valley Parkway filed a successful motion to have the court try the

---

[1]Hazard includes its predecessor entities.

[2]Defendants include Insurance Company of the West, the issuer of a material and labor performance bond, and Valley Parkway Associates, VPA, Valley Parkway Associates, Inc., Keith R. Kelley and Robert L. Anderson, developers of the project. For convenience, we refer to defendants collectively as Valley Parkway.

[3]This is the amount stated in Hazard's opening brief, although we note it alleged in its first amended complaint that Valley Parkway owed it $1,152,152.46.

licensing issue first, arguing that under Business and Professions Code section 7031,[4] Hazard could not maintain the lawsuit because the site work required a general engineering contractor's license. Hazard presented evidence that general building contractors customarily performed the type of site work at issue here. The court nonetheless granted Valley Parkway's motion for judgment and awarded substantial attorney fees to Valley Parkway.[5]

## STANDARD OF REVIEW

■ The interpretation of statutes, as well as administrative regulations, presents questions of law. (*Delta Air Lines, Inc.* v. *State Bd. of Equalization* (1989) 214 Cal.App.3d 518, 525 [262 Cal.Rptr. 803].) Questions of law are subject to independent review on appeal. (*Board of Retirement* v. *Lewis* (1990) 217 Cal.App.3d 956, 964 [266 Cal.Rptr. 225].)

## DISCUSSION

### I. *Statutory Scheme*

■ "The Contractors' State License Law (Law) (§ 7000 et seq.) provides a comprehensive scheme governing contractors doing business in California. The Law is administered by the [Contractors' State License] Board, which is . . . given general authority to adopt rules and regulations reasonably necessary to carry out the provisions of the Law. (§ 7008.)

"The Law reflects a strong public policy in favor of protecting the public against unscrupulous and incompetent contracting work. [Citation.] As our Supreme Court recently noted: 'The purpose of the licensing law is to protect the public from incompetence and dishonesty in those who provide building and construction services. [Citation.] The licensing requirements

---

[4] All statutory references are to the Business and Professions Code. Section 7031 states in part: "(a) Except as provided in subdivision (d) [which is not relevant to this appeal], no person engaged in the business or acting in the capacity of a contractor, may bring or maintain any action, or recover in law or equity in any action, in any court of this state for the collection of compensation for the performance of any act or contract for which a license is required by this chapter without alleging that he or she was a duly licensed contractor at all times during the performance of that act or contract, regardless of the merits of the cause of action brought by the person . . . ."

Section 7031 bars all actions for compensation for unlicensed contract work, regardless of the equities. (*Hydrotech Systems, Ltd.* v. *Oasis Waterpark* (1991) 52 Cal.3d 988, 997 [277 Cal.Rptr. 517, 803 P.2d 370].)

[5] The court awarded $140,000 to Insurance Company of the West, $70,000 to Robert Anderson, and $103,500 to the remaining defendants.

provide minimal assurance that all persons offering such services in California have the requisite skill and character, understand applicable local laws and codes, and know the rudiments of administering a contracting business.' [Citation.]" (*Home Depot, U.S.A., Inc.* v. *Contractors' State License Bd.* (1996) 41 Cal.App.4th 1592, 1597-1598 [49 Cal.Rptr.2d 302], fn. omitted.)

This case involves the statutory classifications of contractors and their interaction with a Contractors' State License Board regulation. The pertinent provisions are as follows:

Section 7026, which provides: "The term contractor . . . is synonymous with the term 'builder' and . . . is any person, who undertakes to . . . construct, alter, repair, add to . . . any building, highway, road, parking facility, railroad, excavation or other structure, project, development or improvement, or to do any part thereof, including the erection of scaffolding or other structures or works in connection therewith . . . ."

Section 7055, which provides:

"For purposes of classification, the contracting business includes any or all of the following branches:

"(a) General engineering contracting.

"(b) General building contracting.

"(c) Specialty contracting."

Section 7057, which provides in pertinent part: "A general building contractor is a contractor whose principal contracting business is in connection with any structure built, being built, or to be built, for the support, shelter and enclosure of persons, animals, chattels or movable property of any kind, requiring in its construction the use of more than two unrelated building trades or crafts, or to do or superintend the whole or any part thereof."

Section 7056, which provides: "A general engineering contractor is a contractor whose principal contracting business is in connection with fixed works requiring specialized engineering knowledge and skill, including the following divisions or subjects: irrigation, drainage, water power, water supply, flood control, inland waterways, harbors, docks and wharves, shipyards and ports, dams and hydroelectric projects, levees, river control and reclamation works, railroads, highways, streets and roads, tunnels, airports

and airways, sewers and sewage disposal plants and systems, waste reduction plants, bridges, overpasses, underpasses and other similar works, pipelines and other systems for the transmission of petroleum and other liquid or gaseous substances, parks, playgrounds and other recreational works, refineries, chemical plants and similar industrial plants requiring specialized engineering knowledge and skill, powerhouses, power plants and other utility plants and installations, mines and metallurgical plants, land leveling and earthmoving projects, excavating, grading, trenching, paving and surfacing work and cement and concrete works in connection with the above mentioned fixed works."

Section 7059, which provides in relevant part: "(a) The board may adopt reasonably necessary rules and regulations to effect the classification of contractors in a manner consistent with established usage and procedure as found in the construction business, and may limit the field and scope of the operations of a licensed contractor to those in which he or she is classified and qualified to engage, as defined by Sections 7055, 7056, 7057, and 7058. A licensee may make application for classification and be classified in more than one classification if the licensee meets the qualifications prescribed by the board for such additional classification or classifications. . . ."

Rule 830 of title 16, California Code of Regulations,[6] which provides:

"Classification Policy.

"(a) All contractors to whom licenses are issued shall be classified . . . as a specialty contractor, as defined in this article; a general engineering contractor (Class A), as defined in Section 7056 of the Code; or a general building contractor (Class B), as defined in Section 7057 of the Code.

"(b) Contractors licensed in one classification shall be prohibited from contracting in the field of any other classification unless they are also licensed in that classification . . . ."

## II. *Statutory Construction*

 Valley Parkway argues that Hazard may do site work of the nature involved here only if its contract also includes the construction of a structure. Where the contract is limited to grading and other types of work listed in section 7056, Valley Parkway argues a general engineering contractor's license is required. The argument is contrary to the statutory scheme.

---

[6]All rule references are to the board's regulations found at title 16, California Code of Regulations, section 810 et seq.

■ "A court's overriding purpose in construing a statute is to ascertain legislative intent and to give the statute a reasonable construction conforming to that intent. [Citation.] In interpreting a statute to determine legislative intent, a court looks first to the words of the statute and gives them their usual and ordinary meaning. [Citation.] Statutes must be given a fair and reasonable interpretation, with due regard to the language used and the purpose sought to be accomplished. [Citation.]" (*Home Depot, U.S.A., Inc.* v. *Contractors' State License Bd., supra,* 41 Cal.App.4th at pp. 1600-1601.) "Significance should be given, if possible, to every word of an act, and a construction that renders a word surplusage should be avoided. [Citation.]" (*Id.* at p. 1602.)

■ The plain words of the statute show a general building contractor's operation is not limited solely to the construction of structures. A general building contractor is defined as one "whose principal contracting business is in connection with any structure built [i.e., remodeling or repair], being built [i.e., new construction], *or to be built*. . . . requiring in its construction the use of more than two unrelated building trades or crafts . . . ." (§ 7057, italics added.) The phrase "in connection with any structure . . . *to be built*" is meaningless unless general building contractors are authorized to perform, or superintend, work limited to site preparation for future construction or alteration of a structure, or for construction of, for instance, sidewalks, landscaping, pools, fencing and other exterior components of residential or commercial development with respect to which the construction of the buildings is yet to occur.[7]

Valley Parkway's reliance on *Vallejo Development Co.* v. *Beck Development Co.* (1994) 24 Cal.App.4th 929 [29 Cal.Rptr.2d 669], is misplaced. There, the issue was whether an altogether unlicensed company could recover for performing infrastructure improvements. The court said no, stating the work was "of the type for which a general engineering contractor's license is required." (*Id.* at p. 939.) The *Vallejo* court was not determining whether a general building contractor is properly licensed to perform

---

[7]"There is nothing in the contractors' license law which states the manner in which a contractor must accomplish the work; i.e., there is nothing to prevent him from doing all of the work himself, or of hiring, or contracting with, specialty contractors to do a certain part of the work." (3 Ops.Cal.Atty.Gen. 311, 312-313 (1944).) Specialty contractor licenses are available for the types of work involved in Hazard's contract with Valley Parkway, including those for: concrete work, earthwork and paving (including blasting), fencing, landscaping, masonry, parking and highway improvement, pipeline, plumbing and sanitation (including storm drains). (Rule 832 et seq.) It has long been recognized that many specialty contractors are engaged in work general engineering contractors are also authorized to perform (40 Ops.Cal.Atty.Gen. 112, 113 (1962)); thus, because general building contractors may either perform or superintend such work, they also may engage in some of the work general engineering contractors are authorized to perform under section 7056.

site work preparatory to the construction of buildings, and its dicta does not stand for the proposition that only a general engineering contractor may perform such work.

■ Further, contrary to Valley Parkway's position, rule 830, subdivision (b), providing "[c]ontractors licensed in one classification shall be prohibited from contracting in the field of any other classification unless they are also licensed in that classification," does not prohibit general building contractors from performing work general engineering contractors are also authorized to perform. The board's regulations may only limit the scope of operations of a general building contractor as defined by section 7057. (§ 7059.) Because section 7057 specifically authorizes general building contractors to perform work in connection with structures "to be built," in contracting for site work of the nature at issue here, they are not "contracting in the field of any other classification," but in their own field. If rule 830, subdivision (b) prohibited a general building contractor from contracting for such work, the rule would not fall within the board's delegated power, because it would be at odds with section 7057.[8] (*Hartzell* v. *Connell* (1984) 35 Cal.3d 899, 914 [201 Cal.Rptr. 601, 679 P.2d 35].)

---

[8]The parties ask us to consider the legislative history of the Law. "While the legislative history of a statute is helpful in determining legislative intent, there is no need to resort to such extrinsic aids if the language of the statute is clear and unambiguous. [Citation.]" (*Home Depot U.S.A., Inc.* v. *Contractors' State License Bd., supra,* 41 Cal.App.4th at p. 1602, fn. 5.) In any event, the legislative history, as well as the administrative history of the board's rules, supports our conclusion.

In summary, until 1947 general contractors of either type, engineering or building, could perform site work of the type at issue here. (See 3 Cal.Ops.Atty.Gen., *supra,* 311, 312-313; *Oddo* v. *Hedde* (1950) 101 Cal.App.2d 375, 388 [225 P.2d 929].) The board then confined the operations of general engineering contractors to the scope set forth in section 7056, which at that time did not include earthmoving and other types of site work required for residential or commercial construction. Thus, only a general building contractor could undertake such work. Apparently in response, in 1951 the Legislature amended section 7056 to allow general engineering contractors to perform substantially more types of work, including grading and other site work. Neither the Legislature nor the board prohibited general building contractors from continuing to do site work. Rather, once again, either type of general contractor could perform such work. A more detailed history follows.

In 1929, the Legislature enacted the state's first law providing for the registration of contractors. (Stats. 1929, ch. 791, §§ 1-14, pp. 1591-1595.) It defined "contractor," but included no classification system. (*Id.,* § 3, p. 1592.) The uncodified law was amended in 1935 to include the current three categories. A general engineering contractor's principal business was related to "fixed works for any or all of the following divisions or subjects: irrigation, drainage, water power, water supply, flood control, inland waterways, harbors, municipal improvements, railroads, highways, tunnels, airports and airways, sewerage and bridges." A general building contractor's principal business was the construction, alteration, repair, etc., of "any structure built for the support, shelter and enclosure of persons, animals, chattels or movable property of any kind." (Stats. 1935, ch. 816, § 4, pp. 2217-2218.) In 1937, the list of fixed works a general engineering contractor was licensed to perform was amended

If the Legislature intended to prohibit a general building contractor from performing site work unless the contract also included construction of a structure, it could easily have done so. That it has not is understandable, because such a restriction is illogical and fails to promote the purpose of the law, which is to minimally assure " 'that all persons offering such services in California have the requisite skill and character, understand applicable local laws and codes, and know the rudiments of administering a contracting business.' [Citation.]" (*Home Depot, U.S.A., Inc.* v. *Contractors' State License Bd.*, *supra*, 41 Cal.App.4th at p. 1598.) We think Hazard puts it well:

---

to delete municipal improvements. (Stats. 1937, ch. 499, § 3, p. 1477.) At the same time, the definition of a general building contractor was amended to be substantially as it is today: "[A] contractor . . . whose principal contracting business is in connection with any structure built, being built, or to be built . . . ." (*Id.* at pp. 1477-1478.) In 1939, the Legislature codified licensing law by adding section 7000 et seq. to the Business and Professions Code. The definitions of general building and engineering contractors remained as they were. Section 7059 provided: "The registrar, with the approval of the board, may adopt rules and regulations necessary to effect the classification of contractors in accordance with the definitions of the branches of the contracting business and in a manner consistent with established usage and procedure as found in the construction business." (Stats. 1939, ch. 37, § 1, pp. 381-395.) In 1941, the Legislature repealed sections 7055 through 7058, thereby eliminating the statutory classification system. (Stats. 1941, ch. 971, §§ 5-8, pp. 2603-2604.) Section 7059 was amended to provide: "The registrar, with the approval of the board, may adopt rules and regulations necessary to effect the classification of contractors in a manner consistent with established usage and procedure as found in the construction business, and may limit the field and scope of the operations of a licensed contractor to those in which he is classified and qualified to engage. . . ." (Stats. 1941, ch. 971, § 9, p. 2604.) In 1945, the Legislature reenacted the classification system (§ 7055) using the same three categories—general engineering contractor (§ 7056), general building contractor (§ 7057) and specialty contractor (§ 7058). The definitions of general engineering and building contractors remained essentially as they were in 1939. Section 7059 was amended to provide: "The registrar, with the approval of the board, may adopt rules and regulations necessary to effect the classification of contractors in a manner consistent with established usage and procedure as found in the construction business, and may limit the field and scope of the operations of a licensed contractor to those in which he is classified and qualified to engage, as defined by Sections 7055, 7056, 7057, and 7058. . . ." (Stats. 1945, ch. 1159, §§ 1-5, pp. 2207-2208.) In 1946, the board adopted rule 730 (the precursor to current rule 830), which provided in part, ". . . after licensees already licensed are classified or reclassified into their proper classification, licensees licensed in one classification shall generally be prohibited from contracting in the field of any classification outside of the classification in which they are licensed and in the field of any other unrelated classifications for which specific prequalifying examinations have been inaugurated . . . . This policy is to be construed in harmony with established usage and procedure as found in the contracting business." In 1947, the board adopted rule 760 (the precursor to current rule 834), which provided in part: "A licensee classified as a general engineering contractor, shall operate only within the scope as defined in Section 7056 . . . ." In 1951, the Legislature amended section 7056 to substantially broaden the divisions of fixed works a general engineering contractor may perform. Added, among numerous other categories, were streets and roads, land leveling and earthmoving projects, excavating, grading, trenching, paving, surfacing and concrete work. (§ 7056.)

"[T]he purpose of the licensing scheme is to insure honesty and competency. No rational end is served by a scheme which permits the [general building] contractor who builds a building to perform the site work therefor, but outlaws the [contract of a general building] contractor who performs the same site work but does not build the building. The relevant concern is not whether the contractor will build a building, but whether the contractor knows enough about construction generally to perform competent site work. If a general building contractor is properly licensed and qualified to perform fixed works in connection with a structure to be built by the contractor, the same contractor is not somehow disqualified because he is not to build the structure."

■ Moreover, Valley Parkway's argument fails even if the phrase "to be built" is not considered. Section 7057 defines a general building contractor's work in terms of its *principal* business, and the vast majority of Hazard's contracts included not only site work but the building of structures. There is nothing prohibiting a contractor whose principal business meets the criteria from contracting for other types of work from time to time. (*Oddo* v. *Hedde, supra*, 101 Cal.App.2d at pp. 388-389; see also *Home Depot, U.S.A., Inc.* v. *Contractors' State License Bd., supra*, 41 Cal.App.4th at p. 1602.)

In summary, we find no support for Valley Parkway's position, and the trial court's finding, that Hazard was improperly licensed to perform the commercial subdivision site work.[9] We are not required to consider Hazard's argument that as long as a general building contractor's principal business is related to the construction of buildings, it may occasionally perform any type of work whatsoever, including all fixed works listed in section 7056, i.e., harbors, docks, wharves, bridges and other large engineering projects customarily undertaken by governmental entities. Our analysis is limited to the situation at hand.

Our conclusion makes it unnecessary to consider Hazard's argument that it substantially complied with licensing requirements. Further, because the awards of attorney fees to respondents were based on the trial court's determination they prevailed, and we are reversing the judgments, the arguments regarding the awards are moot.

---

[9]The trial court acknowledged that a general building contractor may perform "site work . . . in conjunction with the building of a building." It found, however, that Hazard was required to have a general engineering contractor's license, because its contract with Valley Parkway included no building of structures.

## DISPOSITION

The judgments in favor of Valley Parkway Associates, VPA, Valley Parkway Associates, Inc., Keith R. Kelley, Robert L. Anderson and Insurance Company of the West are reversed; the case is remanded for trial on the remaining issues. Appellant to recover costs on appeal.

Work, Acting P. J., and Benke, J., concurred.

A petition for a rehearing was denied March 14, 1997, and respondents' petition for review by the Supreme Court was denied May 21, 1997.