Filed 4/23/15  Turkmen v. Katz CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| RAHMI TURKMEN, | B254436 |
| Plaintiff and Appellant, | (Los Angeles County |
| v. | Super. Ct. No. BC398880) |
| JAMES R. KATZ et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, William F. Fahey, Judge.  Affirmed.

Alfred R. Keep for Plaintiff and Appellant.

Bonetati, Kincaid & Soble, Inc., Matthew A. Arigo, Jeremy Snider and Eugene R. Grace for Defendants and Respondents.

INTRODUCTION

Appellant and cross-defendant Rahmi Turkmen appeals from a judgment entered following a grant of summary judgment in favor of respondents and cross-complainants James R. Katz and his wife Gail Lynn Katz on their cross-claim against Turkmen under the Contractor's State License Law (Bus. & Prof. Code, § 7031, subd. (b)),[1] which provides in relevant part that parties who hire an unlicensed contractor are entitled to reimbursement for amounts paid to the contractor.

Turkmen, who has a tile contracting license, performed a number of jobs at the Katzes' residence over a multi-year period. He sued the Katzes for failing to pay him for some of the work he performed, and the Katzes filed a cross-claim seeking reimbursement of $195,425, the amount they had paid Turkmen for construction work they alleged he was not licensed to perform.

This case was previously before us on appeal after a jury trial. (See *Turkmen v. Katz*, June 21, 2012, B234235 [nonpub. opn] (*Turkmen I*).) The jury awarded Turkmen $120,000 in damages for unpaid work he performed for the Katzes that the jury concluded was within Turkmen's tile contractor license. However, based on the Katzes' cross-claim for reimbursement, the trial court ordered that the $120,000 award be offset by $195,425. The net result was that Turkmen was ordered to pay the Katzes $75,425. On appeal, we concluded that that the jury had made no findings as to what portion of the Katzes' $195,425 payments was for unlicensed work. We therefore reversed the judgment in part and remanded the matter to the trial court for a new trial on the issue of how much

---

[1] All subsequent undesignated statutory references herein are to the Business and Professions Code.

of the $195,425 should be returned to the Katzes because it was payment for work Turkmen was not licensed to perform.

On remand, the trial court granted the Katzes' motion for summary judgment on the reimbursement claim, and awarded them the full $195,425 they sought (for a total amount of $75,425 after the $120,000 offset). The trial court found that Turkmen failed to raise a triable issue that any of the work for which Turkmen was paid fell within his tile contractor's license, and thus concluded that he was required to reimburse the full amount paid to him. Alternatively, the court found that Turkmen failed to proffer evidence to rebut the Katzes' showing that his tile contractor's license had been suspended as a matter of law for failure to obtain worker's compensation insurance; as such, Turkmen had failed to maintain a valid license at all times, as required by law, and thus the Katzes were entitled to reimbursement for all their payments to him.

In the instant appeal, Turkmen contends that the trial court erred in granting summary judgment on both the above grounds. He also contends that the Katzes' reimbursement claim was barred by the statute of limitations and that the claim should have been dismissed because the Katzes failed to proffer evidence during the first trial of the amount that Turkmen was paid for unlicensed work.

We affirm the grant of summary judgment on the first ground upon which the trial court relied. Due to Turkmen's failure in his appellate briefs to cite to evidence in the record that he performed work at the Katzes' residence that fell within his tile contractor's license, he has forfeited the issue. We further find that he forfeited his statute of limitations defense by failing to raise it at trial and that he was not entitled to resurrect the defense upon the limited remand in this case over the issue of damages on the reimbursement claim. Finally, Turkmen's argument that the reimbursement claim should have been dismissed for the Katzes' failure to

adduce evidence at trial is not an argument properly raised in opposition to the Katzes' motion for summary judgment. Accordingly, we affirm the judgment.

# BACKGROUND

*Background Facts*

Turkmen has a "C-54" contractor's license, a classification for ceramic and mosaic tile contractors,[2] issued by the California Contractors State License Board. He does not have a general contractor's license.

Turkmen was first hired by the Katzes in 2002 to perform wrought iron work at their residence in La Canada, California. Over the next five years, Turkmen did a number of miscellaneous jobs on the Katzes' property for which he was paid a total of $195,425. In early 2006, Turkmen began building a recording studio on the Katzes' property pursuant to an oral agreement, and he finished working on the project in early 2008. The Katzes failed to pay him for work performed on the studio.

*Procedural History*

A. *The Complaint and the Trial*

Turkmen filed a complaint against the Katzes alleging causes of action for breach of oral contract, balance due on an open book account, and a common count for work labor and materials. He sought damages in the sum of $191,075 and invoked his right to a jury trial.

---

[2]    "A ceramic and mosaic tile contractor prepares surfaces as necessary and installs glazed wall, ceramic, mosaic, quarry, paver, faience, glass mosaic and stone tiles; thin tile that resembles full brick, natural or simulated stone slabs for bathtubs, showers and horizontal surfaces inside of buildings, or any tile units set in the traditional or innovative tile methods, excluding hollow or structural partition tile." (Cal. Code Regs., tit. 16, § 832.54.)

4

The Katzes filed a cross-complaint alleging causes of action for (1) fraud, (2) breach of contract, (3) breach of implied warranty of reasonable workmanship, (4) conversion, (5) negligent design, engineering, construction and planning, and (6) rescission and return of monies paid to an unlicensed contractor (§ 7031, subd. (b)).  They contended that Turkmen misrepresented that he was a licensed general contractor who was capable of performing all building trade specialties.  They alleged that they paid him more than $190,000 for construction work that he was not licensed to perform, and they sought recovery of the full amount.

A jury trial was held on the parties' claims with the Honorable Daniel J. Buckley presiding.  As relevant here, the jury concluded that with respect to the studio, Turkmen provided tile work within his license that reasonably was valued at $120,000, and thus Turkmen was entitled to recover that amount from the Katzes.  The jury made no findings regarding the extent to which Turkmen's earlier work was not covered by his license, and made no related findings as to which portion of the $195,425 paid to Turkmen for that work was subject to reimbursement to the Katzes pursuant to their cross-claim under section 7031, subdivision (b).  Nonetheless, the trial court ordered that the $120,000 jury verdict in Turkmen's favor would be offset by $195,425, the full amount the Katzes had paid Turkmen for his pre-studio work.  Thus, the court ordered Turkmen to pay the Katzes $75,425.

B. *The First Appeal*

Turkmen appealed from the judgment.  As pertinent here, he argued that the work for which he was paid included both jobs that were within his license (such as laying tiles), and tasks for which he was not licensed (such as building a

5

retaining wall and performing electrical work). He contended that the trial court therefore erred in finding that Turkmen should reimburse the full amount the Katzes had paid him. We concluded that the jury's special verdicts did not support the judgment, and that the trial court implicitly, and improperly, made a factual finding that all the work done prior to the studio fell outside the tile setter's license. We therefore ordered that the judgment be reversed with respect to the damages award on the Katzes' cross-claim for reimbursement for payments for unlicensed work under section 7031, subdivision (b), and we remanded the matter for a new trial on the question of which portion, if any, of the $195,425 paid to Turkmen was for work outside his tile setter's license and therefore should be returned to the Katzes.

## C. *Proceedings on Remand*

On remand, the case was reassigned to a different judge, the Honorable William F. Fahey, for a new trial on the sole issue of the amount owed to the Katzes on their claim for reimbursement. The court set a trial date, which was advanced and vacated when the parties were not properly prepared for trial at a series of status conferences. The court suggested that the matter was suitable for summary adjudication and counsel agreed to a shortened time schedule for a summary judgment motion.

### 1. *The Katzes' Summary Judgment Motion*

The Katzes moved for summary judgment on their reimbursement claim, arguing that none of the work performed by Turkmen at the Katz residence was within the C-54 license. Alternatively, they argued that Turkmen did not possess a valid C-54 license at all times, because it was suspended as a matter of law for failure to obtain workers' compensation insurance, and thus he was required to

6

reimburse all payments to the Katzes. Because we conclude that summary judgment properly was granted as to the first ground, below we set forth only the evidence proffered by the parties with respect to that basis for summary judgment.

a. *The Katzes' Evidence*

The Katzes proffered evidence that Turkmen possessed a C-54 Ceramic and Mosaic tile license. In a declaration, Mr. Katz described the extensive and varied nature of the construction work Turkmen had performed at the Katz residence between 2002 and 2008, for which he was paid a total of $195,425. A schedule of payments by check totaling $195,425 and copies of the canceled checks also were submitted. The exhibits submitted also included photographs of the projects Turkmen had undertaken at the Katz residence, showing what appears to be extensive stonework, much of it outside on paths, patios, and walls.

The Katzes also proffered an expert witness declaration from Larry Dunn, who stated that he has been a licensed general contractor since 1979 with an expertise in residential construction, and that he is also an attorney who has practiced construction law for 20 years. Dunn opined in his declaration that a contractor with a C-54 license is not entitled to build any structure, wall, floor, decking, or walkway. Such a tile contractor "prepares surfaces as necessary," meaning that he may apply adhesive material to existing surfaces upon which tile is to be set, but that contractor may not build or erect the underlying surface. He further stated that a C-54 license is limited to installing tile, and to working inside of buildings. Dunn's declaration further stated that he examined the work performed by Turkmen on the Katzes' property, which inspection led to the following observations and opinions about whether Turkmen performed work within the scope of the C-54 license.

7

On the west side of the house, Turkmen performed the following construction work: building a concrete block retaining wall containing electrical components and covered with stone (varying in thickness of approximately two to three inches and eight to 14 inches in length), with a wrought iron fence on top; constructing a patio and a concrete slab walkway, both covered in stones; and erecting a two-story wall covered in stones, with concealed electronic and natural gas conduits and pipes leading to an electrical and gas space heater. Dunn opined that none of this work fell under a C-54 license, and instead all the tasks performed were within the purview of masonry, concrete, ornamental metal, plumbing and reinforcing steel license classifications.

Dunn stated that Turkmen also relocated a compressor/condenser of an air conditioning unit, which does not fall within a C-54 license. In addition, Turkmen created steel sheet-metal utility doors which require an ornamental metal contractor's license. Further, Turkmen demolished a section of the outside north wall of the home (which required a demolition contractor's license), installed a concrete slab there (requiring a concrete contractor's license) with rebar reinforcement (requiring a reinforcing steel contractor's license), and built a laundry room addition that required wood framing, drywall, and installation of wood-framed stained glass windows (requiring a framing and roof carpentry contractor, drywall contractor, and a glazing contractor). Stone pieces cover the concrete slab floor and inside walls of the laundry room, and on the outside of the laundry room, Turkmen applied flat stones to the upper walls and rounded field stones set in concrete along the base of the walls. According to Dunn, this stonework required a masonry contractor. Turkmen also installed a sewer line, copper intake lines, and a natural gas line, as well as an electrical conduit for laundry machines and lighting, all jobs that required plumbing or electrical

8

contractors' licenses. Dunn stated that "there was not one square inch of Ceramic tiles composing any portion of this laundry room."

Turkmen also erected a 70-foot long retaining wall comprised of a concrete bar with rebar, with a wrought iron fence on top (requiring concrete, reinforcing steel, and ornamental iron contractors' licenses). That wall led to a double gazebo structure that Turkmen built near a pre-existing pool. For the floor of that structure, Turkmen laid a concrete slab and covered it with approximately two-inch thick irregular shaped stones with concrete grout in between (requiring concrete, reinforcing steel, and masonry contractors). Turkmen added an electrical conduit and buried two natural gas outlets (tasks requiring an electrical and a plumbing contractors' license, respectively). Just east of the pool, Turkmen erected a concrete block retaining wall with a pool shower (requiring masonry, reinforcing steel, and plumbing contractors' licenses). This work did not include laying any ceramic or mosaic tile that would fall within a C-54 license.[3]

Dunn concluded, "It is my opinion that I could have lawfully, through licensed subcontractors, performed every bit of the work described herein above without having to hire a C-54 Ceramic and Mosaic Tile contractor for any portion of that work whatsoever. It is also your declarant's position that a C-54 Tile setter[] . . . is not properly licensed to do any of the performed work described herein."

---

[3] Dunn also described Turkmen's work building a recording studio, and stated that there were no ceramic or mosaic tiles utilized in that construction with the possible exception, in the shower, of "20 to 25 different small colored glass looking stones," the installation of which possibly fell within the C-54 license. However, the work performed on the studio is irrelevant because it is undisputed that the Katzes did not pay for any work on the studio and thus the work performed on the studio is not part of the reimbursement claim.

b. *Turkmen's Evidence in Opposition to Summary Judgment*

In opposing summary judgment, Turkmen primarily relied on his own declaration to support his contention that "the great majority" of work he performed at the Katz residence was within the scope of his C-54 license.

In his declaration, Turkmen stated that he attended technical school in Turkey, where he took various courses including electrical, plumbing, welding and operation of machines. He was employed on a ship for six years, during which time he performed electrical work, plumbing work, major welding work, operating machines and solar work. Upon emigrating to the United States, he worked for an electrical sign company for a year and a half installing, repairing, and doing electrical work on signs. Then from 1989 to 1997 he worked for a company called Color Tile, where he learned about the installation of various types of tile and installed interior and exterior tile in bathrooms, kitchens, floors, entryways, balconies, patios, fireplaces, barbeques and other applications. He acquired his C-54 tile license during that time.

Turkmen stated that "[b]y reason of my schooling and work experience, I became an expert in all phases of construction work with emphasis on installation of all types of tile, including stone tile." However, the trial court concluded that Turkmen failed to qualify as an expert regarding the scope of the C-54 license. Thus, the court excluded a number of statements in Turkmen's declaration stating that most of the work he performed fell within that license, such as his statement that 90 percent or more of the work performed on the Katz property was under the C-54 license, and his statement that "[a]ll of the stone tile work that I performed was covered by my C-54 license." Likewise, the court excluded Turkmen's opinions regarding the differences and overlap between work performed by a tile contractor and a masonry contractor.

10

Although Turkmen's declaration also makes a few factual assertions with respect to the types of materials he used to cover surfaces both inside and outside, suggesting that the materials he used constituted "tiles" within the meaning of the C-54 classification, on appeal he does not cite to any of that evidence. Turkmen does not reference or cite any of those facts in his appellate briefs. It is not the responsibility of this court to comb the appellate record for facts supporting Turkmen's contentions on appeal. (*Del Real v. City of Riverside* (2002) 95 Cal.App.4th 761.)

### 2. *Trial Court's Ruling*

Turkmen made objections to Dunn's declaration that were summarily overruled for failure to lodge a proposed order. The Katzes made numerous objections regarding Turkmen's declaration and other evidence submitted in opposition to summary judgment, and, as discussed above, the trial court sustained many of those objections.

The court found that Turkmen failed to offer admissible evidence to create a triable issue as to whether any of the work performed by Turkmen at the Katz residence was within the limitations expressly contained in the C-54 license. The court concluded that Turkmen failed to offer admissible expert testimony to dispute the expert opinion of Dunn, who opined that Turkmen's C-54 license did not cover the work he performed at the Katz residence and testified that a C-54 license permits only interior work and the application of ceramic and mosaic type tile, not the heavy stone work reserved for masonry contractors or the other heavy construction work performed by Turkmen. In Turkmen's own declaration, he offered opinions that most of his work fell within the C-54 license, but the court found that Turkmen's "own work history as a tile setter and his unspecified 'experience in the field working with tile contractors and others' is an insufficient

11

foundation to permit the expansive opinion testimony he proffers, especially as to contractors' licenses which he does not have." Thus, the court found his opinions inadmissible, including his statements in his declaration that his work fell within the scope of the C-54 classification. The trial court further concluded based on its interpretation of the C-54 license classification that C-54 contractors are permitted to install tiles, which are necessarily thin, and that the extensive stone and brick work and large and elaborate foundations built by Turkmen did not fall within that C-54 specialty, but rather fell within other contracting specialties.

As an alternative ground for summary judgment in the Katzes' favor, the court found there was no triable issue as to whether Turkmen did not, at all times while performing work at the Katz residence, possess a valid C-54 license. The Katzes presented evidence that Turkmen hired day laborers who are presumed to be employees of Turkmen; therefore, Turkmen was required to maintain worker's compensation insurance, and because he did not have such insurance, his license was suspended as a matter of law.

The court entered an amended judgment awarding the Katzes $75,425 as reimbursement for payments for unlicensed work, plus costs totaling $6,712.17, for a total of $82,137.17, and this timely appeal followed.

## DISCUSSION

I.    *Legal Framework*

"To protect the public, the Contractors' State License Law (CSLL; Bus. & Prof. Code, § 7000 et seq.) imposes strict and harsh penalties for a contractor's failure to maintain proper licensure." (*MW Erectors, Inc. v. Niederhauser Ornamental & Metal Works Co., Inc.* (2005) 36 Cal.4th 412, 418, fn. omitted (*MW Erectors*).)  Subject to some exceptions, section 7031, subdivision (a) shields

12

parties who utilize the services of an unlicensed contractor[4] from lawsuits by that contractor seeking to collect payment for unlicensed work. (§ 7031, subd. (a); *MW Erectors, supra*, 36 Cal.4th at p. 418.) Further, subdivision (b) of section 7031 provides that parties who hire an unlicensed contractor are entitled to reimbursement for amounts paid to such a contractor even if they knew the contractor was unlicensed.[5] (§ 7031, subd. (b); *Alatriste v. Cesar's Exterior Designs, Inc.* (2010) 183 Cal.App.4th 656, 668.) Under this latter subdivision, "contractors are required to return all compensation received without reductions or offsets for the value of material or services provided." (*White v. Cridlebaugh* (2009) 178 Cal.App.4th 506, 520-521.)

"'[C]ourts may not resort to equitable considerations in defiance of section 7031.' [Citation.] That is because the statute ""'represents a legislative determination that the importance of deterring unlicensed persons from engaging in the contracting business *outweighs any harshness between the parties . . . .*'" [Citation.]' [Citation.]" (*WSS Industrial Construction, Inc. v. Great West Contractors, Inc.* (2008) 162 Cal.App.4th 581, 587.)

A licensee classified as a specialty contractor, including a tile setter, "shall not act in the capacity of a contractor in any classification other than one in which he/she is classified except on work incidental or supplemental to the performance of a contract in a classification in which any contractor is licensed by the Board."

---

[4]    Section 7026 defines "contractor" to include "any person who undertakes to or offers to undertake to, or purports to have the capacity to undertake to, or submits a bid to, or does himself or herself or by or through others, construct, alter, repair, add to, subtract from, improve, move, wreck or demolish any building [or part of a building]."

[5]    Section 7031, subdivision (b) provides in full: "Except as provided in subdivision (e), a person who utilizes the services of an unlicensed contractor may bring an action in any court of competent jurisdiction in this state to recover all compensation paid to the unlicensed contractor for performance of any act or contract."

13

(Cal. Code Regs., tit. 16, § 834, subd. (c); see Bus. & Prof. Code, § 7059, subd. (a).) "[W]ork in other classifications is 'incidental and supplemental' to the work for which a specialty contractor is licensed if that work is essential to accomplish the work in which the contractor is classified." (Cal. Code Regs., tit. 16, § 831.) The Katzes were entitled to be reimbursed for amounts they had already paid Turkmen for work that he was not licensed to perform or work that was not incidental and supplemental to work for which he was properly licensed. (§ 7031, subds. (a), (b).)

A party is entitled to summary judgment if facts that are undisputed or as to which there is no reasonable dispute entitle the party to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.) A plaintiff or cross-complainant moving for summary judgment must prove each element of its claim. (Code Civ. Proc., § 437c, subd. (p)(1).) If the moving plaintiff satisfies this initial burden, the burden shifts to the defendant to set forth specific facts showing that a triable issue of material fact exists. We employ a de novo review of the trial court's decision, "'considering all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) and the uncontradicted inferences the evidence reasonably supports. [Citation.]' [Citation.]" (*Los Alamitos Unified School Dist. v. Howard Contracting, Inc.* (2014) 229 Cal.App.4th 1222, 1225-1226.)

II.    *The Katzes' Reimbursement Cause of Action*

   1. *Issue Whether Turkmen's Work Fell Within C-54 License*

On appeal, Turkmen contends that he raised a triable issue of fact that he performed work for the Katzes covered by the C-54 license classification for "Tile Contractors (Ceramic and Mosaic)," which provides that "[a] ceramic and mosaic tile contractor prepares surfaces as necessary and installs glazed wall, ceramic,

14

mosaic, quarry, paver, faience, glass mosaic and stone tiles; thin tile that resembles full brick, natural or simulated stone slabs for bathtubs, showers and horizontal surfaces inside of buildings, or any tile units set in the traditional or innovative tile methods, excluding hollow or structural partition tile." (Cal. Code Regs., tit. 16, § 832.54 (§ 832.54).) He contends that his stonework for the Katzes constituted the laying of "stone tiles" and that his brick work used "thin tile that resembles full brick" as permitted by the C-54 classification. (§ 832.54.)

In his opening appellate brief, Turkmen failed to challenge any of the trial court's evidentiary rulings, including its determination that Turkmen did not qualify as an expert witness who could opine as to the scope of the C-54 and other classifications. He raised the issue for the first time in his reply brief, which did not afford the Katzes an opportunity to respond to his arguments. As such, he has forfeited the contention that the trial court's evidentiary rulings, including its exclusion of much of Turkmen's declaration, were erroneous. (*Larson v. UHS of Rancho Springs, Inc.* (2014) 230 Cal.App.4th 336, 352-353 [appellant forfeited argument not raised until the reply brief]; *Habitat & Watershed Caretakers v. City of Santa Cruz* (2013) 213 Cal.App.4th 1277, 1292, fn. 6 ["[a]rguments presented for the first time in an appellant's reply brief are considered waived"].) Thus, we may not consider the excluded evidence as "valid supporting evidence" that can create a triable issue of fact. (*McCoy v. Pacific Maritime Assn.* (2013) 216 Cal.App.4th 283, 294, fn. 2; see *California Bank & Trust v. Lawlor* (2013) 222 Cal.App.4th 625, 637 (*Lawlor*).)

"The interpretation of statutes, as well as administrative regulations, presents questions of law. [Citation.] Questions of law are subject to independent review on appeal. [Citation.]" (*Hazard, Jr. Enterprises, Inc. v. Insurance Co. of the West* (1997) 52 Cal.App.4th 1088, 1092.) The question whether the materials Turkmen

laid on the indoor and outdoor walls and floors constitute "tiles" within the meaning of the C-54 classification is a mixed question of law and fact. (§ 832.54.)

We start with the meaning of the word "tile," which the Oxford English Dictionary defines as "[a] thin square slab of glazed ceramic, cork, linoleum, or other material for covering floors, walls, or other surfaces." (http://www.oxforddictionaries.com/us/definition/american_english/tile.) In keeping with this commonly understood meaning of the word "tile," the C-54 classification provides that tile contractors may install "thin tile that resembles full brick, natural or simulated stone slabs for bathtubs, showers and horizontal surfaces inside of buildings." (§ 832.54.) The preceding sentence more generally refers to "stone tiles," but we conclude these stone tiles are by definition *thin* tiles, rather than thicker slabs of stone.[6] (*Ibid.*)

It is not the appellate court's duty to "comb through the record for evidentiary items to create a disputed issue of material fact." (*Hodjat v. State Farm Mutual Automobile Ins. Co.* (2012) 211 Cal.App.4th 1, 10.) In his statement of facts and argument sections in his appellate briefs, Turkmen fails to cite any evidence not excluded by the trial court that he performed stonework, whether

---

[6] It is illuminating to contrast the classification for a C-54 tile contractor with the C-29 license classification for masonry contractors, who may "install[] concrete units and baked clay products; concrete, glass and clay block; natural and manufactured stone; terra cotta; and fire brick or other material for refractory work. This classification includes the fabrication and installation of masonry component units for structural load bearing and non-load bearing walls for structures and fences installed with or without mortar; ceramic veneer (not tile) and thin brick that resembles full brick for facing; paving; and clear waterproofing, cleaning and caulking incidental to masonry construction." (Cal. Code Regs., tit. 16, § 832.29.) Although Turkmen points to Exhibits A and C attached to his declaration as support for his contention that there is significant overlap between the permissible scope of tile contractors and masonry and other types of specialty contractors, he ignores the fact that this evidence was excluded by the trial court and thus may not be considered. Therefore, he has no admissible evidence to support his contention. (*Lawlor, supra*, 222 Cal.App.4th at p. 637.)

inside or outside, that made use of thin stone tiles within the C-54 classification. Similarly, he fails to point to any evidence that he laid any "thin tile that resembles full brick," as specified by the C-54 classification as opposed to heavier brick work. (§ 832.54.) Turkmen's brief thus fails to comply with California Rules of Court, rule 8.204(a)(1)(C), which requires that each brief must "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears." We are thus compelled to conclude that Turkmen has forfeited the issue whether and to what extent Turkmen's stone and brick work fell within the C-54 license. (See, e.g., *Nielsen v. Gibson* (2009) 178 Cal.App.4th 318, 324 [appellant must "support arguments with appropriate citations to the material facts in the record," and if an appellant fails to provide such citations, "the argument is forfeited"].)[7] Accordingly, we affirm the trial court's determination that Turkmen failed to raise any facts to dispute the Katzes' evidence that none of his work was covered by the C-54 license, and thus he owed the full $195,425 paid to him for his pre-studio work.

2. *Turkmen's Statute of Limitations Defense*

Turkmen contends that a "significant portion" of the Katzes' reimbursement claim is barred by the statute of limitations. Specifically, he argues that the two-year statute of limitations for oral contracts applies, and thus reimbursement claims as to any payments made before November 25, 2006 (two years before the cross-

_____

[7] Similarly, Turkmen fails to cite to the record to support his contention that before July 2004, his scope of permissible work was broader by virtue of a Home Improvement Contractor (HIC) endorsement. The trial court found that Turkmen had failed to proffer any admissible evidence supporting his contention because he did not provide a copy of the purported endorsement, failed to provide a copy of the long-expired Business and Professions Code 7150.2, and failed to cite any case authority in support of the argument.

17

complaint was filed) are time-barred.  Although Turkmen raised the statute of limitations defense in his answer to the Katzes' cross-complaint, that defense should have been litigated in pretrial motions or during the trial on the cross-complaint, and Turkmen forfeited any statute of limitations defense by failing to raise it at the proper juncture.  (*Zubarau v. City of Palmdale* (2011) 192 Cal.App.4th 289, 306 [party forfeits any statute of limitations defense by failing to raise it in the trial court].)  We reject the argument Turkmen made in opposition to the summary judgment motion that "[t]he issue of the applicability of the statute of limitations did not come up during the previous trial because Cross-Complainants did not litigate and did not present any evidence on the Sixth Cause of Action of their Cross-Complaint seeking reimbursement for unlicensed work."  The Katzes' cross-claim for reimbursement clearly was at issue at the trial, and Turkmen's failure to raise the issue of the statute of limitations before or during the trial resulted in forfeiture of the defense.  When we remanded the case following the trial, the remand was limited to "the issue of damages on the Katzes' cross-claim for reimbursement."  (*Turkmen I, supra.*)  Thus, Turkmen was not entitled to resurrect the statute of limitations defense on remand.

3. *Turkmen's Contention that Reimbursement Claim Should be Dismissed for Failure to Adduce Evidence at Trial*

Turkmen contends that the trial court should have concluded that no reimbursement was due to the Katzes on their reimbursement claim by virtue of their failure at the previous trial to introduce evidence regarding the amount of money paid for unlicensed work on the Katz residence other than the studio. Turkmen may not seek dismissal of the Katzes' claim at this juncture and in this manner.  Such an argument should have been raised in a motion for a nonsuit at

18

trial, and it was not properly raised in opposition to the Katzes' motion for summary judgment after remand.

## DISPOSITION

The judgment is affirmed.  Appellant shall bear all costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.


We concur:


EPSTEIN, P. J.


COLLINS, J.

19