[No. D039962. Fourth Dist., Div. One. Aug. 26, 2003.]

ARTURO A. GONZALEZ et al., Plaintiffs and Appellants, v.
PARADISE VALLEY HOSPITAL et al., Defendants and Respondents.

COUNSEL

Law Offices of Charles A. Bleiler, Charles A. Bleiler, Diane E. Bond; Vicky Jean Banks; and Audrey Powers Thornton for Plaintiffs and Appellants.

Neil, Dymott, Perkins, Brown & Frank, Hugh A. McCabe and Michael Bishop for Defendant and Respondent Paradise Valley Hospital.

Martha L. McGill; Robert A. Cosgrove & Associates, Cosgrove & Birmingham and Robert A. Cosgrove for Defendant and Respondent Jon E. Highum.

OPINION

McCONNELL, J.—Plaintiffs Arturo A. Gonzalez and Maria D. Gonzalez appeal summary judgments for defendants Paradise Valley Hospital (the Hospital) and Jon E. Highum, M.D. The Gonzalezes sued the defendants for professional negligence, arising from the death of their son Arturo Gonzalez (Arturo) after he escaped from the Hospital's psychiatric unit during an involuntary 72-hour hold under Welfare and Institutions Code[1] section 5150. The Gonzalezes contend the trial court erred by ruling that under this court's opinion in *Heater v. Southwood Psychiatric Center* (1996) 42 Cal.App.4th 1068 [49 Cal.Rptr.2d 880] (*Heater*), section 5278 immunizes the defendants from any breaches of the applicable standards of care during the detention. We agree with the Gonzalezes, based on our recent holding in *Jacobs v. Grossmont Hospital* (2003) 108 Cal.App.4th 69 [133 Cal.Rptr.2d 9] (*Jacobs*), and reverse the judgments. We conclude section 5278 provides no immunity for negligence during a 72-hour hold.

## FACTUAL AND PROCEDURAL BACKGROUND

Arturo had a history of paranoid schizophrenia. On the evening of September 26, 1999, Arturo, after a period of not taking his medication, attempted to choke his mother. National City police officers took him to the Hospital's emergency room and requested that he be detained on a 72-hour hold under section 5150. Arturo was agitated and "clearly psychotic." He ran out the door, but officers returned him to the emergency room where he was placed in restraints and medicated. Dr. Highum, a psychiatrist, ordered that Arturo be transferred to the Hospital's locked psychiatric unit for a 72-hour hold on the ground he posed a threat to others.

The following morning, Dr. Highum examined Arturo and concluded he remained a danger to others. Dr. Highum noted Arturo's "[t]hought content

---

[1] Statutory references are to the Welfare & Institutions Code unless otherwise specified.

was without current suicidal or homicidal ideation, obsessions or compulsions," but he was suspicious and having auditory hallucinations. Dr. Highum treated Arturo with Haldol Decanoate, which Arturo reported "worked relatively well for him previously."

That afternoon, Arturo broke through a window in the psychiatric unit and escaped. He left the hospital grounds, entered a nearby apartment, which was occupied, and grabbed a kitchen knife and cut his throat and abdomen. Police arrived and Arturo obeyed their order to come outside. However, the police shot him and inflicted mortal wounds.[2]

The Gonzalezes sued the Hospital and Dr. Highum for professional malpractice.[3] In a first amended complaint, the Gonzalezes alleged the defendants knew or should have known Arturo was at risk for escape, and they negligently failed to "provide adequate treatment and medication for his mental illness," "failed to provide adequate supervision by observing [him] ... at regular intervals," and "failed to provide adequate restraints, security, and proper facilities," and as a foreseeable consequence of the negligence Arturo was shot and killed by police officers. The Gonzalezes alleged Dr. Highum was acting within the scope of an agency or employment relationship with the Hospital.

The Hospital moved for summary judgment on the grounds it met the applicable standard of care and its conduct was not a legal cause of Arturo's death, and in any event, under section 5278 it is immune from liability for any medical malpractice or other negligence occurring during a proper 72-hour hold. For the latter argument, the Hospital relied on this court's opinion in *Heater, supra,* 42 Cal.App.4th 1068.

In opposition to the motion, the Gonzalezes argued *Heater* does not stand for the proposition section 5278 confers absolute immunity on health care providers for negligent treatment of a patient detained on a 72-hour hold. The Gonzalezes also argued there are "triable issues of fact as to whether [the Hospital's] psychiatric lock-down facility was compliant with building codes and the standard of care in the industry," whether Arturo "was properly supervised during his detention, and whether he received the appropriate anti-psychotic medications and care required to treat his condition."

---

[2] The Gonzalezes assert that because of "the loss of blood and psychosis, [Arturo] was unable to comply with the police officer's command to drop the knife, and as he struggled to remain standing the police shot him to death." In support, they cite to their complaint, but it does not allege those particular facts.

[3] The Gonzalezes also sued National City and individual police officers, but those defendants are *not* involved in this appeal.

In support, the Gonzalezes submitted the declaration of their expert, psychiatrist Clark E. Smith. In Dr. Smith's opinion, Dr. Highum knew or should have known Arturo was "a dangerously unstable, acutely psychotic patient, at extremely high risk for elopement," and he breached the standard of care by not giving Arturo medication "for stabilization for acute psychosis." According to Dr. Smith, Haldol Decanoate is a "short term sedating medication" that "requires six days to reach a peak effect," and the drug is "intended to be used on patients that have been stabilized on short acting antipsychotic medications." Dr. Smith believed it was "extremely unlikely that ... Arturo ... had received any therapeutic effect from the Haldol Decanoate shot given approximately two hours before he died." Further, Dr. Smith believed the Hospital was negligent in placing Arturo "in a room without adequate observation and with breakable windows which allowed the means" for his escape.

Citing *Heater, supra,* 42 Cal.App.4th 1068, the court granted the Hospital's motion on the sole ground of immunity under section 5278. Dr. Highum separately moved for summary judgment on the same ground, and the court granted the motion. Judgments for the Hospital and Dr. Highum were entered on February 11, 2002, and April 4, 2002, respectively.

## DISCUSSION

## I

### *Standard of Review*

A "party moving for summary judgment bears the burden of persuasion that there is no triable issue of material fact and that he [or she] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 [107 Cal.Rptr.2d 841, 24 P.3d 493].) A defendant satisfies this burden by showing " 'one or more elements of' the 'cause of action' in question 'cannot be established,' or that 'there is a complete defense' " to that cause of action. (*Ibid.*) If the defendant meets his or her initial burden, "the opposing party is then subjected to a burden of production of his [or her] own to make a prima facie showing of the existence of a triable issue of material fact." (*Ibid.*) We review rulings on summary judgment motions independently. (*Rubenstein v. Rubenstein* (2000) 81 Cal.App.4th 1131, 1143 [97 Cal.Rptr.2d 707].)

## II

### *Scope of Immunity Under Section 5278*

■ In California, the Lanterman-Petris-Short Act (LPS Act) (§ 5000 et seq.) governs the involuntary treatment of the mentally disordered. (*Conservatorship of Susan T.* (1994) 8 Cal.4th 1005 [36 Cal.Rptr.2d 40, 884 P.2d 988].) Under the LPS Act, a designated facility may detain a person for up to 72 hours for evaluation and treatment if there is "probable cause to believe that the person is, as a result of mental disorder, a danger to others, or to himself or herself, or gravely disabled." (§ 5150; see also § 5151.)[4] "Each person admitted to a facility for 72-hour treatment and evaluation … shall receive an evaluation as soon after he or she is admitted as possible and shall receive whatever treatment and care his or her condition requires for the full period that he or she is held." (§ 5152, subd. (a).)

Section 5278 provides in part: "Individuals authorized under this part to detain a person for 72-hour treatment and evaluation pursuant to Article I (commencing with Section 5150) … shall not be held either criminally or civilly liable for exercising this authority in accordance with the law." The Gonzalezes contend the immunity does not extend to negligent treatment during the confinement. The defendants counter that under *Heater, supra,* 42 Cal.App.4th 1068, any negligence committed during a legal 72-hour hold is within section 5278's scope of immunity.

In *Heater,* this court stated, "[N]o other conclusion is possible than that section 5278 means precisely what it says it means, and that civil liability, whether for battery, for false imprisonment, or for medical malpractice is precluded insofar as the detention is 'in accordance with the law.' " (*Heater, supra,* 42 Cal.App.4th at p. 1083.) In that case, however, the only alleged wrongful act discussed was the administration of a tranquilizer without the plaintiff's consent. The plaintiff's assault and battery cause of action was based on the lack of consent, and there is no suggestion the medical malpractice claim was based on other conduct. In our recent decision in *Jacobs, supra,* 108 Cal.App.4th at page 77, we cautioned that *Heater*'s discussion of section 5278's applicability to medical malpractice claims is limited to the facts presented there.

The scope of immunity afforded by section 5278 is a legal question governed by rules of statutory construction. "A court's overriding purpose in

---

[4] Other provisions of the LPS Act allow for longer periods of treatment. (See §§ 5250 [intensive 14-day treatment], 5260 [extended commitment for the suicidal], 5300 [180-day commitment for the imminently dangerous], 5350 [30-day temporary conservatorship or one-year conservatorship for the gravely disabled].)

construing a statute is to ascertain legislative intent and to give the statute a reasonable construction conforming to that intent. [Citation.] In interpreting a statute to determine legislative intent, a court looks first to the words of the statute and gives them their usual and ordinary meaning." (*Home Depot, U.S.A., Inc. v. Contractors' State License Bd.* (1996) 41 Cal.App.4th 1592, 1600 [49 Cal.Rptr.2d 302].) "If the language is clear and unambiguous, the plain meaning of the statute governs." (*Ford v. Norton* (2001) 89 Cal.App.4th 974, 981 [107 Cal.Rptr.2d 776].) "The words of a statute must be construed in context and provisions relating to the same subject matter must be harmonized to the extent possible." (*Ibid.*)

" 'The LPS Act must be construed to promote the intent of the Legislature, among other things, to end the inappropriate, indefinite and involuntary commitment of mentally disordered persons, to provide prompt evaluation and treatment *and to protect mentally disordered persons* (§ 5001).' [Citation.]" (*Jacobs, supra,* 108 Cal.App.4th at p. 75, quoting *Michael E. L. v. County of San Diego* (1986) 183 Cal.App.3d 515, 525 [228 Cal.Rptr. 139].)

In *Jacobs,* we concluded that in enacting section 5278, the Legislature did not intend to immunize health care providers from liability for breaches of the applicable standards of care during the period of confinement. (*Jacobs, supra,* 108 Cal.App.4th at p. 79.)[5] Here, we affirm our conclusion that section 5278 is inapplicable to actions for negligence stemming from acts or omissions in evaluation or treatment during 72-hour holds.

Section 5278 provides that "[i]ndividuals authorized ... to detain a person for 72-hour treatment and evaluation pursuant to Article 1 (commencing with Section 5150) ... shall not be held either criminally or civilly liable *for exercising this authority in accordance with the law.*" (§ 5278, italics added.) The italicized language shows the Legislature's intent to protect health care providers from any liability for intentional torts arising from the exercise of (1) the statutory authority to involuntarily detain mentally ill persons, upon probable cause, and (2) the statutory mandate to promptly evaluate and treat detained persons. (§§ 5150, 5151; *Jacobs, supra,* 108 Cal.App.4th at p. 78.) "Without the immunity provided by section 5278, an involuntary detention and treatment without consent would arguably constitute kidnapping, false imprisonment, or battery." (*Jacobs, supra,* at p. 78.)

The protected conduct is confined to the *exercise* of statutory authority to detain, evaluate and treat against the patient's wishes, and does not extend to the *manner* in which evaluation and treatment are carried out. In

---

[5] We decided *Jacobs, supra,* 108 Cal.App.4th 69, after initial briefing was completed here. We invited the parties to submit supplemental briefing in light of *Jacobs,* and we have taken their responses into consideration.

other words, liability arising from negligent evaluation or treatment is not liability arising from the "exercis[e of] this authority in accordance with the law." (§ 5278.) The interpretation of section 5278 the defendants urge is contrary to its language, and would undermine a purpose of the Legislature in enacting the LPS Act, protection of mentally ill persons. Any intent of the Legislature to confer an immunity that would deny involuntarily detained persons redress for injuries caused by evaluation or treatment falling below the standard of professional care should be expressly stated.

Dr. Highum contends his alleged negligence is immunized because "[k]eeping an involuntarily-detained patient confined in a hospital ... during a 72-hour hold is inherent in a detention pursuant to ... section 5150." Dr. Highum relies on the following language from *Jacobs, supra,* 108 Cal.App.4th at pages 78–79: "[T]he scope of section 5278 immunity extends to claims based on facts that are inherent in an involuntary detention pursuant to section 5150. If there is probable cause for the detention, the statute therefore provides immunity for the decision to detain as well as for the detention and its inherent attributes, including the fact that the patient must necessarily be evaluated and treated without consent.... However, the immunity does not extend to *other* negligent acts, intentional torts, or criminal wrongs committed during the course of the detention, evaluation, or treatment." (Italics added.) ▇ We clarify here that the immunity of section 5278 does not extend to any negligent acts, and the inclusion of the word "other" in *Jacobs* was unintended. As we went on to hold in *Jacobs, supra,* at page 79, "section 5278 does not provide immunity for injuries proximately caused by negligence."

Additionally, Dr. Highum cites Government Code section 856.2, subdivision (a)(2), which immunizes public entities and their employees from liability for an "injury to, or the wrongful death of, an escaping or escaped person who has been confined for mental illness or addiction." Dr. Highum points out that in *Jacobs,* we found our interpretation of Welfare and Institutions Code section 5278 is consistent with its statutory counterpart, Government Code section 856, which immunizes public entities and their employees from liability for injuries arising from the determination of whether to confine a person for mental illness or addiction, the terms and conditions of the confinement, and whether to release a confined person, if such determinations are "*carr[ied] out with due care.*" (Gov. Code, § 856, subds. (a) & (b), italics added.) "Public employees are specifically *not* exonerated from liability for injuries proximately caused by their negligent or wrongful acts or omissions in carrying out or failing to carry out the specified determinations. (Gov. Code, § 856, subd. (c).)" (*Jacobs, supra,* 108 Cal.App.4th at p. 79.) However, the LPS Act includes no provision such as Government Code section 856.2, subdivision (a)(2), and any corresponding immunity for the private sector must come from the Legislature.

The Gonzalezes alleged Arturo's death was proximately caused by defendants' negligence during his detention, specifically, Dr. Highum's failure to appropriately treat his psychosis and the Hospital's failure to adequately supervise and observe him and its provision of inadequate facilities. The Gonzalezes raised triable issues of fact regarding their negligence claims, and thus the summary judgments were improper.

## DISPOSITION

The judgments are reversed. The Gonzalezes are awarded costs on appeal.

McIntyre, Acting P. J., and Aaron, J., concurred.