Filed 7/13/25  N.M. v. Schwartz CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| N.M. SON, | |
| Plaintiff and Appellant, | G061325 |
| v. | (Super. Ct. No. 30-2020-01145245) |
| MICHAEL DAVID SCHWARTZ et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from judgments of the Superior Court of Orange County, Deborah C. Servino, Judge.  Affirmed.

N.M. Son, in pro. per., for Plaintiff and Appellant.

Schmid & Voiles, Denise H. Greer, Douglas A. Amo and Frederick James for Defendant and Respondent Michael David Schwartz.

Kjar, McKenna & Stockalper, James J. Kjar and David J. Rubaum for Defendant and Respondent Gail Ross.

\*          \*          \*

N.M.,[1] a minor at the time of the events in question, appeals from the trial court's entry of judgment against him on his claims of medical malpractice and false imprisonment after the court granted summary judgment in favor of doctors Michael D. Schwartz (Schwartz) and Gail Ross (Ross). The doctors had placed or maintained a mental health hospitalization hold on N.M. following student reports made to N.M.'s high school that he allegedly posted a threat on social media to shoot up the school. While N.M.'s brief indicates he has gone on to academic success pursuing premedical studies in a university degree program, and his opposition to summary judgment included his emphatic denial that he made any threat, that opposition did not identify any evidence known to Ross or Schwartz that precluded their probable cause findings to detain N.M. for continued evaluation and treatment. We therefore affirm the summary judgment rulings.

## FACTUAL AND PROCEDURAL BACKGROUND

N.M. and N.M. Dad filed their complaint in May 2020. After several rounds of pleadings, including demurrers the trial court sustained as to most of the plaintiffs' causes of action, Ross and Schwartz each eventually sought summary judgment on the remaining claims for medical malpractice and false imprisonment.[2]

According to Schwartz's separate statement of undisputed facts submitted in support of his summary judgment motion, which largely mirrored Ross's separate statement, a police officer initiated N.M.'s hold at CHCM on May 18, 2019, after N.M.

---

[1] N.M. is usually referred to in the trial record as "N.M. Son" to distinguish him from his father, "N.M. Dad," who did not file a notice of appeal. (Cal. Rules of Court, rule 8.100(a)(1).)

[2] College Hospital Costa Mesa's (CHCM) motion for summary judgment proceeded in parallel with Ross's and Schwartz's motions, but resulted in a separate judgment, which N.M. also appealed. That appeal is resolved on virtually identical grounds in *N.M. Son v. CHCM, Inc.* (G061035, July 13, 2023) [nonpub.opn.]).

had been suspended by school authorities when other students reported N.M. "posted on social media threats of shooting his school." Hospital records indicated the officer, who is statutorily authorized to commence an initial detention for purposes of a mental health evaluation when a person presents a danger to himself or others (Welf. & Inst. Code, § 5150, subd. (a)), determined an evaluation was necessary based on the threat described by the school and his interview with N.M.

According to the officer's account, N.M. claimed he posted the threats as a joke, disclosed a prior depression diagnosis, and described himself as suffering from body dysmorphia, apparently in relation to his thinning hair. Hospital staff evaluated N.M. and made an initial determination he met the criteria for a section 5150 hold; Schwartz evaluated N.M. the next day.

Schwartz noted the alleged threats, N.M.'s depressed mood, impaired insight and judgment, and his statement that a medication for major depressive disorder (Trintellix) had "helped" him in the past. Schwartz concluded continued hospitalization was necessary, noting "suicidal ideations" and an "impaired level of functioning." Schwartz diagnosed N.M. with major depression and anxiety and cautioned that discharge could "exacerbate illness, depression, anxiety, and medication stabilization"; he also re-prescribed Trintellix.

Two days later, on May 21, 2019, Schwartz spoke with N.M.'s mother, father, and uncle. They informed him N.M. had been prescribed Trintellix in January that year, was non-compliant in taking it or a Prozac prescription, his preoccupation with his appearance included threats of self-harm, and he had a recent history of outpatient and partial inpatient mental health treatment.[3]

---

[3] N.M.'s opposition to summary judgment offered no facts in his separate statement to rebut this evidence; instead, he argued Schwartz had offered "Inadmissible Hearsay." We address this argument below in relation to expert opinion evidence.

On May 23, 2019, Schwartz spoke with the psychologist at N.M.'s school, "who reviewed [with him the] postings describing a desire to potentially harm people at school," and N.M.'s allegedly "paranoid thoughts, especially about his mother." That same day, according to Schwartz's account in his summary judgment separate statement of undisputed facts, N.M. Dad "came to the hospital . . . and demanded to take his son home," but Schwartz maintained N.M.'s continued hospitalization was necessary under Welfare and Institutions Code[4] section 5250. In his opposition N.M. did not identify any evidence to rebut Schwartz's conclusion or to suggest N.M. Dad conveyed information to Schwartz which might cause him to reconsider a continued hold. Instead of evidence, N.M. offered his own assessment of Schwartz's detention decision: "Improper Legal Conclusion."

This pattern continued throughout the remainder of the summary judgment moving papers and opposition. On May 25-26, Ross evaluated N.M. as the coverage physician in Schwartz's absence. She found he had a flat blank affect, "could not regulate his affect and impulsivity reliably," lacked empathy, and displayed narcissistic traits. N.M. presented as "preoccupied, irritable, [and] unpredictable," with "fragile self-esteem," a "poor vocabulary for feeling words," and "no age-appropriate social skills." Ross found him "not fit for discharge" because he posed "a risk of harm to others."

In response, N.M.'s separate statement offered no contrary evidence; instead, he argued Ross's assessment was not "proof of [him] being a danger to himself or others." N.M. levied legal attacks on Ross's evaluations as "Inadmissible Opinion," "Improper Legal Conclusion," and "Lacks Foundation."

Schwartz reevaluated N.M. daily for the next five days, from May 27 through June 1, 2019, and his assessment remained unchanged: "still a danger to others,

---

[4]     For brevity, further citations to the Welfare and Institutions Code are shortened to WIC or left undesignated if the context is clear.

paranoia, anxiety and impaired insight and judgment." Schwartz's diagnoses included "major depression, rule out psychosis, body dysmorphic diagnosis; rule out OCD, DTO GD (danger to others, gravely disabled)." In opposition, N.M. asserted defendants bore "the burden of proof" for the holds, but, with one exception, did not point to evidence to contradict their evaluations.

Disputing defendants' assessment that he posed a risk of harm to himself or others, N.M. cited in his separate statement the "[d]eclaration[s] of two expert doctors stat[ing] he was not psychotic." The two declarations postdated N.M.'s release from the hospital. The psychologist's declaration described tests he administered to N.M. in July 2019, a month or more after N.M.'s discharge; the test results, and "[m]y individual interviews with [N.M.] did not suggest the presence of a psychotic process." The other declaration, by a psychiatrist whom N.M. had seen "since 2018" concluded, based on his evaluation of an unspecified nature and conducted at an unspecified time, N.M. "is not psychotic"; rather, he diagnosed N.M. with "anxiety and depression." N.M. did not suggest or provide evidence in his separate statement, his declaration (or N.M. Dad's), or elsewhere that anyone shared his doctor's conclusions with Ross or Schwartz at the time they were treating him. As we discuss more fully below, the trial court excluded the declarations as untimely.

Returning to the timeline of treatment that defendants established in their separate statement of undisputed facts, Schwartz evaluated N.M. on June 3, June 4, and a final time on June 5, 2019. His assessment remained the same: "paranoid, impaired insight and judgment, still a danger to others." Schwartz planned to "[c]ontinue current treatment plan with therapy and medications," including Trintellix. Schwartz noted he "spoke to the mother the prior night about starting an antipsychotic which she refused to consent to."

Schwartz's notes on June 4 reflected that a "Writ" hearing was scheduled two days later ("Writ on 6-6-19").[5] Following the habeas hearing, the superior court ordered N.M.'s release from the hospital. N.M. did not include the release order in the record on appeal or a transcript, settled statement, clerk's transcript, exhibits, or any other documentation or evidence from the habeas proceedings, and does not appear to have included any such evidence in his opposition to summary judgment. His separate statement does not identify or refer to any evidence of any kind from the habeas hearing.[6]

The trial court granted Ross's and Schwartz's motions for summary judgment, and N.M. now appeals.

## DISCUSSION

1.    *Standard of Review*

A motion for summary judgment is properly granted if the moving papers establish there is no triable issue of material fact, and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc.,[7] § 437c, subd. (c).) We review a trial

---

[5]    WIC section 5254 provides that a person detained on a 14-day hold under section 5250 is entitled to an administrative "certification review hearing" or judicial review, and WIC section 5270.15 *requires* the administrative hearing or habeas corpus judicial review under WIC section 5275 when, as here, the hold is extended beyond 14 days to up to 30 days. (WIC, § 5270.15, subd. (b).) Section 5275 provides: "Every person detained under this part shall have a right to a hearing by writ of habeas corpus for their release after they or any person acting on their behalf has made a request for release."

[6]    Our review of the lengthy appellate record discloses only N.M.'s petition in the superior court for a writ of habeas corpus and the court's appointment of the public defender in the matter. N.M.'s petition requested as the grounds for his petition for release a determination that he "is not gravely disabled; is not a danger to others."

[7]    All further undesignated statutory references are to the Code of Civil Procedure unless specified otherwise or the context makes the cited code clear.

court's decision to grant summary judgment de novo. (*Nava v. Saddleback Memorial Medical Center* (2016) 4 Cal.App.5th 285, 289.)

When a defendant moves for summary judgment, the defendant has the initial burden of presenting evidence sufficient to establish either that the plaintiffs cannot prove one or more elements of their causes of action, or that there is a complete defense.[8] (§ 437c, subd. (p)(2); *Carlsen v. Koivumaki* (2014) 227 Cal.App.4th 879, 889.) If the defendant does so, the burden then shifts to the plaintiffs to produce admissible evidence demonstrating there is a triable issue of material fact as to the claim or defense. (§ 437c, subd. (p)(2); *Carlsen*, at p. 889.) "'[T]o meet that burden, the plaintiff "may not rely upon the mere allegations or denials of its pleadings . . . but, instead, shall set forth the specific facts showing that a triable issue of material fact exists . . . .""" (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 274.) Claims or theories advanced to thwart summary judgment that are not supported by evidence will not raise a triable issue. (*Sangster v. Paetkau* (1998) 68 Cal.App.4th 151, 163, 166 (*Sangster*).)

N.M. contends the trial court erred in granting summary judgment in favor of Ross and Schwartz. We address his contentions that the trial court erred first as to his medical malpractice claim, and then his false imprisonment claim.

2. *Medical Malpractice*

Because the pleadings frame the relevant issues for purposes of summary judgment (*Wassmann v. South Orange County Community College Dist.* (2018) 24 Cal.App.5th 825, 851), we begin with N.M.'s first cause of action in his second

---

[8] N.M. failed to designate defendants' motions for summary judgment to be included in the record on appeal. It is the appellant's burden to provide an appellate record adequate to assess claims of error, including any claim that defendants' showing in their moving papers were insufficient to warrant summary judgment. (*Ketchum v. Moses* (2001) 24 Cal.4th 1122, 1140-1141.)

amended complaint, in which he asserted that Ross and Schwartz committed medical malpractice.

N.M. alleged as the gravamen of his claim that defendants "negligently and carelessly [and] unskillfully examined, misdiagnosed and/or treated . . . N.M. Son, including but not limited to misrepresentation of facts in order to detain plaintiff for a much longer period [than necessary] against his will." N.M. does not identify any specific, alleged misrepresentation of facts; instead, he seems to suggest through his pleading that Ross or Schwartz were wrong in concluding he was a proper subject for a hold. In his malpractice cause of action, N.M. alleged generically that "[i]n their examination, diagnosis, advice, care, treatment and administration of medical care to N.M. Son, defendants . . . failed to exercise that degree of skill and care commonly possessed and exercised by health care providers, medical practitioners, medical doctors, psychiatric professionals, medical specialists [and] physicians . . . who perform the same and similar treatment and diagnostic procedures in the area where defendants practice."

"The elements of a cause of action for medical malpractice are: (1) a duty to use such skill, prudence, and diligence as other members of the profession commonly possess and exercise; (2) a breach of the duty; (3) a proximate causal connection between the negligent conduct and the injury; and (4) resulting loss or damage." (*Johnson v. Superior Court* (2006) 143 Cal.App.4th 297, 305 (*Johnson*).)

To prove a medical malpractice claim, the plaintiff must first establish the applicable standard of care and then demonstrate that the standard of care was breached. (*Powell v. Kleinman* (2007) 151 Cal.App.4th 112, 122 (*Powell*).) "Because the standard of care in a medical malpractice case is a matter 'peculiarly within the knowledge of experts' [citation], expert testimony is required to 'prove or disprove that the defendant performed in accordance with the standard prevailing of care' unless the negligence is obvious to a layperson." (*Johnson*, *supra*, 143 Cal.App.4th 297, 305.) Similarly, "'[c]ausation must be proven within a reasonable medical probability based upon

8

competent expert testimony.'" (*Dumas v. Cooney* (1991) 235 Cal.App.3d 1593, 1603; see also *Bromme v. Pavitt* (1992) 5 Cal.App.4th 1487, 1498 [expert testimony required to establish medical negligence caused patient's injury].)

A medical malpractice defendant who supports a summary judgment motion with applicable expert declarations "'is entitled to summary judgment unless the plaintiff comes forward with conflicting expert evidence.'" (*Munro v. Regents of University of California* (1989) 215 Cal.App.3d 977, 984-985 (*Munro*); *Powell*, *supra*, 151 Cal.App.4th at p. 123.) Ross and Schwartz both submitted declarations by board-certified psychiatrists attesting that each complied with the applicable standard of care while treating N.M. and thus caused him no injury through medical negligence.

N.M. failed to rebut this evidence. N.M. did not designate individuals he identified as experts until nearly a month after the date designated for exchange of expert witnesses, and he ultimately did so only two days before the discovery cutoff date, leaving defendants no time to depose the witnesses. The trial court therefore properly struck the declarations submitted by experts who were not timely designated. (*Perry v. Bakewell Hawthorne, LLC* (2017) 2 Cal.5th 536, 539.) Inadmissible evidence must be disregarded and cannot defeat summary judgment. (*Id.* at p. 543.)

In any event, the opinions would not have aided N.M. in his opposition to summary judgment. The opinions his experts rendered were not responsive on the issues presented regarding N.M.'s malpractice cause of action. Neither expert said anything about the applicable standard of care, whether Ross or Schwartz met or fell short of that standard based on the information available to them at the time they formed their diagnosis, or whether anything Ross or Schwartz did or did not do caused N.M. to suffer any medical injury. In other words, they focused on N.M., not on Ross or Schwartz. In fact, neither expert made any mention of Ross or Schwartz in their declaration. In the absence of any conflicting expert testimony on Ross's or Schwartz's performance in

9

relation to a medical standard of care, both were entitled to summary resolution of N.M.'s medical malpractice claim in their favor. (*Munro*, *supra*, 215 Cal.App.3d at p. 985.)

Invoking the doctrine of res ipsa loquitur, N.M. contends that "[s]ometimes . . . the medical malpractice is so obvious that [expert opinion as to medical negligence or causation of injury is] not needed," as "when a surgeon leaves a sponge in the patient." N.M. insists there was such a self-evident breach of "the normal standard of care" here because "[i]t is illegal to place a minor on a gravely disabled hold (adults only) *no matter what*." (Italics added.) In effect, N.M. seeks to have a presumption of negligence under the doctrine of res ipsa loquitur (Evid. Code, § 646, subd. (b)) serve as a substitute for producing evidence of the applicable standard of medical care and breach of that standard.

However, the authorities N.M. cites do not establish that a minor may not be found gravely disabled; indeed, they do not mention minors or distinguish them from adults. (WIC, §§ 5008, subd. (h)(1)(A), 5270.15, 5350, subd. (e)(1); CACI No. 4002.) They therefore do not support his contention that the treatment provided by Ross or Schwartz rose to the level of "self-evident" medical malpractice. N.M.'s reliance on the doctrine of res ipsa loquitur is therefore without merit.

In asserting a claim for medical malpractice, N.M. asks that Ross's and Schwartz's conduct be judged by the standards of the medical community, i.e., the standard of care according to professionals in that discipline. Having provided no evidence of what that standard was in the form of expert testimony, as was his duty to defeat summary judgment (*Powell*, *supra*, 151 Cal.App.4th at p. 122; *Munro*, *supra*, 215 Cal.App.3d at p. 985), N.M.'s medical malpractice claim necessarily failed to advance past the summary judgment stage.

    3.    *False Imprisonment*

The core of N.M.'s false imprisonment claim as alleged in his second amended complaint is that Ross and Schwartz confined him "against his will or consent

or legal right . . . ." False imprisonment is a tort. (*Easton v. Sutter Coast Hospital* (2000) 80 Cal.App.4th 485, 496.) "The elements of a tortious claim of false imprisonment are: (1) the nonconsensual, intentional confinement of a person, (2) without lawful privilege, and (3) for an appreciable period of time . . . ." (*Ibid.*)

Under the Lanterman-Petris-Short Act (WIC, § 5000 et seq.), "a person who is dangerous or gravely disabled due to a mental disorder may be detained for involuntary treatment." (*Ford v. Norton* (2001) 89 Cal.App.4th 974, 979 (*Ford*).) Nevertheless, it has long been held that involuntary hospitalization "'*in violation of* [the governing statutes] constitutes false imprisonment.'" (*Jackson v. Cedars-Sinai Medical Center* (1990) 220 Cal.App.3d 1315, 1322.)

The statutes envision incremental detention when necessary. (*Ford*, *supra*, 89 Cal.App.4th at p. 979.) The "first step" is a "72-hour treatment and evaluation" hold authorized by WIC section 5150. (*Ford*, at p. 979.) Under this code section, certain officials (including law enforcement and certain medical professionals) are authorized to bring an individual to a designated mental health facility for evaluation if there is "probable cause to believe that the person is, as a result of a mental disorder, a danger to others, or to themselves, or gravely disabled." (WIC, § 5150, subd. (e).) Depending on the outcome of the evaluation, various statutes may authorize further detention. (See, e.g., §§ 5250 [intensive 14-day treatment]; 5270.15 [certification for additional treatment for "not more than 30 days"]; 5300 [up to 180-day commitment for the imminently dangerous]; 5352.1 [30-day temporary conservatorship for the gravely disabled]; see generally *Gonzalez v. Paradise Valley Hospital* (2003) 111 Cal.App.4th 735, 740, fn. 4 (*Gonzalez*).)

Balanced against the safeguards embodied in these statutes, the Legislature has also recognized that "'reasonable decisions as to how to control particular patients should not be chilled, *at the time they are made*, by the prospect of liability.'" (*Johnson v. County of Ventura* (1994) 29 Cal.App.4th 1400, 1410, italics added.) Thus, individuals

11

authorized to detain patients involuntarily, including medical practitioners, "shall not be held either criminally or civilly liable for exercising this authority in accordance with the law." (WIC, § 5278; see, e.g., *Heater v. Southwood Psychiatric Center* (1996) 42 Cal.App.4th 1068, 1080-1081 (*Heater*).)

This language has been construed to mean that no liability can arise when a medical provider's decision resulting in an involuntary detention "is supported by probable cause." (*Jacobs v. Grossmont Hospital* (2003) 108 Cal.App.4th 69, 76 (*Jacobs*); *Gonzalez*, *supra*, 111 Cal.App.4th at p. 741.) A critical feature in determining the existence of probable cause is that a detention decision may not be second-guessed with alleged facts unknown to the medical provider: "'Each case must be decided on the facts and circumstances presented to the [detaining person] *at the time of the detention* . . . .'" (*Heater*, *supra*, 42 Cal.App.4th at p. 1080, italics added, brackets in original.)

Here, Ross and Schwartz supported their respective summary judgment motions with expert witness declarations that, based on the evidence known to Ross and Schwartz when they evaluated N.M., "all of [N.M.'s] holds were supported by probable cause." That does not mean, as N.M. correctly observes, that Ross's and Schwartz's evaluations were dispositive on the question of probable cause—if N.M. submitted contrary evidence. Indeed, the expert opinions were not even dispositive as medical assessments given that, as Ross's expert expressly acknowledged, "health care professionals [can] differ on a patient's diagnosis."

Nevertheless, the evidence Ross and Schwartz presented did put in issue the question of probable cause for summary judgment purposes because it was sufficient for a trier of fact to conclude that probable cause for the holds existed. It was therefore incumbent on N.M. to present evidence that there was not probable cause to hospitalize him. A plaintiff may *not* merely restate allegations from his or her pleadings at this point, as N.M. does repeatedly in his appellate briefing. At the summary judgment stage, the case has progressed past "'mere allegations . . . of [the] pleadings'" to an evaluation of

12

the evidence presented for and against summary judgment. (*Brantley v. Pisaro* (1996) 42 Cal.App.4th 1591, 1594.)

Because the existence of probable cause defeats a plaintiff's case for false imprisonment (*Jacobs*, *supra*, 108 Cal.App.4th at p. 76), once a moving defendant meets his or her initial burden, as here, "to show the action has no merit" (*Grotheer v. Escape Adventures, Inc.* (2017) 14 Cal.App.5th 1283, 1292), the burden of production of evidence "shifts to the plaintiff to demonstrate the existence of a triable issue of material fact" (*id.* at pp. 1292-1293). This can be accomplished by producing "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." (*Bhan v. NME Hospitals, Inc.* (9th Cir. 1991) 929 F.2d 1404, 1409.)

In N.M.'s opposition to summary judgment he did not identify in his separate statement of facts any information known to Ross or Schwartz, or that they should have known, which might have negated probable cause to detain N.M. At summary judgment, the parties' separate statements are critically important because they pinpoint evidence for the trial court to consider so it can determine whether there is any factual conflict that must be resolved by the jury. (See *San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 315 (*San Diego Watercrafts*) [evidence left undisclosed in a party's separate statement may properly be ignored].)

Here, N.M.'s opposition to summary judgment did not identify any evidence that undermined Ross's or Schwartz's probable cause assessments supporting continued detention at the time they made them. Instead, N.M. asserted in a conclusory fashion in his separate statement that he "has never been [a] danger to others or himself" and he "did not have any mental disorder." In making these assertions, N.M. did not set forth any evidence Ross or Schwartz knew, or should have known, which undermined their conclusions; he simply labeled them an "Improper Legal Conclusion." N.M. then made a general reference to his memorandum in opposition to summary judgment,

13

apparently to suggest it contained "facts that prove the hol[d] was in violation of the rules," without specifying any facts.

Such a presentation does not suffice to defeat summary judgment. The predicate facts said to support an argument in opposition to summary judgment must be established by admissible evidence identified in the separate statement. (*San Diego Watercrafts*, *supra*, 102 Cal.App.4th at p. 315.) "[I]n order to avert summary judgment the plaintiff must produce substantial responsive evidence sufficient to establish a triable issue of material fact on the merits of the defendant's showing."[9] (*Sangster*, *supra*, 68 Cal.App.4th at p. 162-163.)

Elsewhere in his separate statement, N.M. alluded generally to the declarations of his "two [expert] doctors" and his contention that the "Habeas corpus Judge ruled [his] confinement was illegal," resulting in the order on June 6 for his

---

[9] N.M. challenged Ross's and Schwartz's showing of probable cause based on the declarations of their respective expert witnesses. But unlike N.M., the witnesses provided—and the defendants' separate statements referenced—the foundational facts supporting probable cause when N.M. was in Ross's and Schwartz's care. An expert "may rely on various sources of information, including hearsay, in forming an opinion." (*People v. Rodriguez* (2014) 58 Cal.4th 587, 646; Evid. Code, § 801, subd. (b).) This applies equally to a treating physician evaluating a patient's mental condition. (*People v. Bona* (2017) 15 Cal.App.5th 511, 522 ["exclusion of the challenged evidence would not have precluded [the doctor] from stating the opinions upon which that evidence was based"].) Thus, the trial court did not abuse its discretion in finding that N.M.'s evidentiary objections based on hearsay, foundation, and other grounds failed to derail summary judgment. (See *Sanchez v. Kern Emergency Medical Transportation Corp.* (2017) 8 Cal.App.5th 146, 154 [abuse of discretion standard applies].)

At best, N.M.'s challenges went to the weight of the evidence, not its admissibility, and therefore the evidence could be considered in support of summary judgment. (See *Guastello v. AIG Specialty Insurance Co.* (2021) 61 Cal.App.5th 97, 105-106 [alleged "'weakness in the underpinnings of such [expert] opinions may be developed upon cross-examination,'" but "'go[] to the weight and credibility of the testimony,'" not whether it met "admissibility requirements"].)

discharge from the hospital. But the untimely declarations by his doctors were inadmissible and therefore provided no basis to deny summary judgment.

Nor did N.M.'s reference to the court's prior habeas ruling. By statute, the issue before the trial court in considering a habeas petition for release under WIC section 5276 is whether "the person requesting release *is*" (italics added) a danger to others or to himself or gravely disabled due to a mental disorder: "If the court finds, (a) that the person requesting release *is not*, as a result of mental disorder or impairment by chronic alcoholism, a danger to others, or to himself or herself, or gravely disabled, (b) that he or she had not been advised of, or had accepted, voluntary treatment, or (c) that the facility providing intensive treatment is not equipped and staffed to provide treatment, or is not designated by the county to provide intensive treatment [then] he or she shall be released immediately." (*Ibid.*, italics added.)

The use of the present tense in the statutory language requires us to conclude that the habeas court's decision standing alone—without any reference to what evidence was before the court, or any explanation by the court of its decision—does not establish that probable cause to legally hold N.M. disappeared at any particular time before that ruling was made. Thus, the release order on June 6 is not evidence that probable cause never justified N.M.'s detention, or that a continued hold became unwarranted at any time before the hearing. In the absence of a triable issue of fact, the trial court properly granted summary judgment.

In his appellate briefing, N.M. advances a plethora of other arguments in opposition to summary judgment, none supported by admissible evidence identified or referenced in his separate statement in opposition to summary judgment or elsewhere in his opposition papers. Those unsupported claims, arguments, or theories are therefore insufficient to defeat summary judgment.

15

## DISPOSITION

The judgments are affirmed.  Respondents are entitled to their appellate costs.


GOETHALS, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


MOORE, J.

16