Filed 6/8/26

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| FRANKLIN SGARAGLINO et al., | 2d Civ. No. B348978 |
| Plaintiffs and Appellants, | (Super. Ct. No. 2023CUPP017970) |
| v. | (Ventura County) |
| COUNTY OF VENTURA, | |
| Defendant and Respondent. | |

Anthony Sgaraglino died by suicide the day after his discharge from the inpatient psychiatric unit of Ventura County Medical Center. His parents, Franklin and Linda Sgaraglino, sued the County of Ventura for wrongful death, asserting the county hospital negligently released him without medication despite indications that he was not safe to be discharged.[1] The trial court entered summary judgment in favor of the county, finding it immune under Welfare and Institutions Code[2] section 5113.

When to release a psychiatric patient from an involuntary commitment is a fraught decision. Recognizing the inherent tension between safety and freedom, the Legislature set time

---

[1] We refer to Anthony by his first name for ease of reference. No disrespect is intended.

[2] Statutory references are to the Welfare and Institutions Code unless otherwise specified.

limits on involuntary detentions and immunized psychiatric facilities and the people who operate them from liability for release decisions. Here we hold that section 5113 immunizes hospitals and their operators for the actions of patients, like Anthony, after they are released. Accordingly, we affirm.

FACTUAL AND PROCEDURAL HISTORY

On January 6, 2023, Anthony was involuntarily detained at Hillmont, the inpatient psychiatric unit at Ventura County Medical Center, under Welfare and Institutions Code section 5150. He was diagnosed with bipolar disorder.

Anthony was discharged three days later. A physician at Hillmont determined he did not meet the criteria for continued hospitalization under section 5250. On January 10, 2023, Anthony took his own life.

In July 2024, appellants, Franklin and Linda Sgaraglino, filed the operative first amended complaint for wrongful death against respondent, County of Ventura, asserting a cause of action for general negligence. Appellants alleged they told county hospital staff that Anthony was suicidal and tried to have his commitment continued. Nevertheless, respondent released him after three days without medication, and despite indications that he might be suicidal.

Respondent filed a motion for summary judgment, asserting immunity under section 5113. Respondent supported its motion with a separate statement of undisputed material facts and a supporting declaration with exhibits.

In opposition, appellants asserted that section 5113 did not bar claims of *gross* negligence. Appellants did not file any responsive separate statement. Instead, they presented the expert declaration of Dr. Leslie Dobson, a licensed clinical psychologist, who opined that Anthony had a family and personal history of mental illness and suicidal ideation. According to Dr. Dobson, Anthony should not have been released from involuntary

hospitalization against the wishes of his family without medication.

The trial court granted the motion, finding section 5113 barred any claim that respondent's treatment and release of Anthony fell below the standard of care. The court held there was no authority supporting appellants' contention that the immunity grant did not apply to gross negligence claims. Because appellants did not file a responsive separate statement, the court deemed the facts in respondent's separate statement undisputed and established. The court overruled respondents' objection to Dr. Dobson's declaration as a whole, but sustained objections to specific statements constituting improper legal conclusions or references to unpleaded statutory provisions.

## DISCUSSION

We agree with the trial court that respondent is immune from liability for releasing Anthony after his section 5150 involuntary detainment.

### Standard of review

We independently review orders granting summary judgment. (*Rojas v. HSBC Card Services Inc.* (2018) 20 Cal.App.5th 427, 431.) Questions of statutory interpretation and the application of the law to undisputed facts are also subject to de novo review. (*Bitner v. Dept. of Corrections & Rehabilitation* (2023) 87 Cal.App.5th 1048, 1058.)

### Lanterman-Petris-Short Act

The Lanterman-Petris-Short Act (§ 5000 et seq.; LPS Act) governs involuntary detainment of persons with mental illness. The Legislature enacted the LPS Act "to end the inappropriate, indefinite and involuntary commitment of mentally disordered persons, to provide prompt evaluation and treatment and to protect mentally disordered persons." (*Michael E. L. v. County of San Diego* (1986) 183 Cal.App.3d 515, 525 (*Michael E. L.*); see also § 5001 [stating legislative intent of LPS Act].)

3

Section 5150 permits a person to be involuntarily detained for 72 hours for evaluation and treatment if that person is a danger to themselves or others due to a mental health disorder. (§ 5150, subd. (a).) After 72 hours, the person shall be released, referred for additional care and treatment on a voluntary basis, or be placed under the control of a conservator. (§§ 5152, subd. (b), 5250.) The person can also be certified for 14 days of intensive treatment if a professional at the facility evaluating the person "has analyzed the person's condition and has found the person is . . . a danger to others or to themselves, or is gravely disabled" due to the mental health disorder. (§ 5250, subd. (a); see also § 5152, subd. (b).)

The LPS Act immunizes "certain professionals from civil or criminal liability for any action by a person released early or at the end of a particular period of custody." (*Coburn v. Sievert* (2005) 133 Cal.App.4th 1483, 1493 [citing statutes granting immunity] (*Coburn*).) As relevant here, the facility providing treatment "shall not be civilly or criminally liable for any action by a person released at or before the end of the period for which the person was admitted pursuant to the provisions" of the article under which the person was detained.[3] (§ 5113.)

Respondent supported its summary judgment motion with a separate statement of undisputed material facts. (Code Civ. Proc., § 437c, subd. (b)(1).) Appellants were obligated to support their opposition with a separate statement conceding or disputing each fact asserted by respondent. (*Id.*, subd. (b)(3); Cal. Rules of Court, rule 3.1350, subd. (f).) They did not do so and instead filed the declaration of Dr. Dobson. The trial court did not indicate whether it considered evidence outside the separate statement.

We exercise our discretion to consider the portions of Dr. Dobson's declaration to which the trial court did not sustain an

---

[3] A new version of section 5113 was enacted, effective on January 1, 2026. (Stats. 2025, ch. 691, § 1.) The amendments to the statute do not affect the outcome of this appeal.

objection.  (See *Ghazarian v. Magellan Health, Inc.* (2020) 53 Cal.App.5th 171, 183.)

*Respondent immunized pursuant to section 5113*

Summary judgment must be granted if there is no triable issue as to any material fact and the moving party is entitled to a judgment as a matter of law.  (Code Civ. Proc., § 437c, subd. (c).)  A defendant seeking summary judgment must first demonstrate that one or more elements of the plaintiff's cause of action cannot be established or that there is a complete defense.  (*Id.*, subd. (p)(2).)  If the defendant meets its burden, plaintiff must show a triable issue of material fact.  (*Ibid.*)

To show that it is immune from liability and entitled to a favorable judgment, respondent demonstrated that Anthony was involuntarily detained at respondent's psychiatric unit for 72 hours under section 5150.  Respondent also showed that after the expiration of the 72-hour period, Anthony did not qualify for an additional hold under section 5250.  As a result, he was discharged.

Under section 5113, facilities providing treatment pursuant to section 5150 are immune from civil liability "for any action by a person released at or before the end of the period for which the person was admitted . . . ."  Here, appellants seek damages against respondent for negligence and wrongful death on the theory that respondent discharged Anthony without medication and despite indications he was not safe to leave the hospital, causing him to take his own life.  On its face, section 5113 protects respondent from liability for Anthony's post-release actions.

Appellants contend that section 5113 does not apply in cases of gross negligence.  The statute, however, contains no exception for gross negligence.  "When the language of a statute is clear and unambiguous, there is no need for interpretation and we must apply the statute as written."  (*Lafayette Morehouse, Inc. v. Chronicle Publishing Co.* (1995) 37 Cal.App.4th 855, 862.)

5

Case law points to immunity as an important part of the LPS Act's goal of ending the inappropriate, indefinite and involuntary commitment of mentally disordered persons. In *Michael E. L.*, a patient was committed to a county mental health facility under section 5150. (*Michael E. L.*, *supra*, 183 Cal.App.3d at pp. 525-526.) The facility released him early despite indications that he was a danger to his wife. (*Id.* at pp. 520-521, 522-523.) After his release, the patient killed his wife and then himself. (*Id.* at p. 521.) The guardian of the couple's son sued the county for negligence on a theory that a county physician should have warned the wife. (*Id.* at pp. 521-523, 528.) The trial court granted the county's nonsuit motion, and the guardian appealed. (*Id.* at p. 521.)

The Court of Appeal in *Michael E. L.*, *supra*, 183 Cal.App.3d 515 held that the physician and the county were immune from liability, under section 5154, for releasing the patient early. The court found that the alleged failure to warn related to the patient's "[post-release] activity" for which the defendants could not be liable under the statute. (*Michael E. L.*, at p. 530.) According to the court, the Legislature recognized that some patients released before 72 hours "may . . . harm . . . others." (*Ibid.*) Nevertheless, considering the goal of the LPS Act to end indefinite commitments, section 5154 provides immunity for defendants who decide on early release. (*Ibid.*) The court stated, "The corollary to the early release and future conduct uncertainties is the immunity provided in section 5154 — no liability for any actions by a person released at or before the end of 72 hours." (*Ibid.*)

The immunity provided by section 5113 is nearly identical to that of section 5154 except that it additionally immunizes facilities and their operators. (See *Michael E. L.*, *supra*, 183 Cal.App.3d at p. 524, fn. 5 [recognizing that section 5154 "tracks" section 5113].) Both statutes provide immunity from civil and

6

criminal liability for any action by a person released at or before the end of 72 hours.

Here, respondent demonstrated that a physician evaluated Anthony and determined he did not meet the criteria for a section 5250 hold. Since appellants failed to dispute this fact by filing their own separate statement, it is deemed established and they cannot now attack the validity of the release decision. In any event, Dr. Dobson's declaration that the release decision did not meet the medical standard of care is irrelevant. That is the very type of argument foreclosed by section 5113's immunity provision. "If evidence that a question of fact exists regarding compliance with professional standards in evaluation, treatment, or release were deemed sufficient to create a triable issue of fact under the subjective belief standard, then summary judgment on the immunity issue would become virtually unavailable." (*Coburn*, *supra*, 133 Cal.App.4th at p. 1505.)

Finally, appellants' argument that there is no immunity for a grossly negligent release decision is unsupported. They cite *Jacobs v. Grossmont Hospital* (2003) 108 Cal.App.4th 69 (*Jacobs*) and *Gonzalez v. Paradise Valley Hospital* (2003) 111 Cal.App.4th 735 (*Gonzalez*). Neither case deals with section 5113 immunity for the actions of people released after a section 5150 hold. Further, neither case even mentions gross negligence. *Jacobs* dealt with a general negligence claim after a patient fell while in the hospital. That type of injury falls outside of any statutory immunity. (*Jacobs*, *supra*, 108 Cal.App.4th at p. 79.) In *Gonzalez*, the patient escaped and was shot by police. Plaintiff alleged negligent treatment and conditions of detention. The Court of Appeal held section 5278 immunity does not extend to negligent treatment during the confinement. (*Gonzalez*, *supra*, 111 Cal.App.4th at pp. 741-742.)

Neither case applies to the facts involving Anthony's release or the immunity that covers that decision. Here, the gravamen of appellants' first amended complaint is that Anthony

7

was released prematurely.  To save their claim from immunity, appellants now attempt to frame the release decision as "treatment negligence" by analogy to *Gonzalez*.  But even if the treating psychiatrist ignored indications that Anthony was still dangerous to himself before he was released, this alleged negligence relates to the harm that followed from the timing of his release, not from harm that occurred during his treatment.  It is, therefore, covered by section 5113's immunity.

*Appellants' new theories of liability are barred on appeal*

Appellants now seek to raise theories of liability not asserted in the trial court or in the first amended complaint.

Appellants argue, for the first time on appeal, there are triable issues under title 42 United States Code section 1983, the Bane Act under Civil Code section 52.1, Government Code section 815.6, and the failure to warn others under *Tarasoff v. Regents of University of California* (1976) 17 Cal.3d 425.  These theories are forfeited because appellants did not raise them in the trial court in their opposition to the summary judgment motion. (*Magallanes de Valle v. Doctors Medical Center of Modesto* (2022) 80 Cal.App.5th 914, 924.)

Moreover, appellants did not assert these theories in the operative first amended complaint.  "[S]ummary judgment cannot be *denied* on a ground not raised by the pleadings." (*Bostrom v. County of San Bernardino* (1995) 35 Cal.App.4th 1654, 1663.)  "A party is not permitted to change his position and adopt a new and different theory on appeal.  To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant." (*Ernst v. Searle* (1933) 218 Cal. 233, 240-241 (*Ernst*); *North Coast Business Park v. Nielsen Construction Co.* (1993) 17 Cal.App.4th 22, 29 [applying *Ernst* to summary judgment].)

Appellants invoke *Ward v. Taggart* (1959) 51 Cal.2d 736, 742 (*Ward*), for the proposition that new theories may be raised for the first time on appeal when they present pure questions of law on undisputed facts.  The exception does not apply here.  The

new theories are not pure questions of law. Each depends on factual predicates never developed in the pleadings or at summary judgment. The undisputed facts in the record on appeal are limited to those in the county's separate statement — none of which supports the new theories. Because appellants failed to plead these theories below, the factual record needed to support them was never developed, and *Ward* does not rescue them on appeal.

### *Doe defendants do not invalidate summary judgment*

Citing *Pierce v. San Mateo County Sheriff's Dept.* (2014) 232 Cal.App.4th 995 (*Pierce*), appellants contend that granting summary judgment undermined their right to discover the identity of unknown defendants. The status of the Doe defendants is not readily discernible from the record on appeal. The motion for summary judgment was brought on behalf of only the county. In granting the motion, the trial did not say it was dismissing the case in its entirety. At oral argument, however, both sides agreed that the effect of the court's ruling is a complete dismissal against all defendants.

In *Pierce, supra*, 232 Cal.App.4th at page 1021, the Court of Appeal held that the trial court erred in dismissing the case in its entirety on demurrer because a cause of action could theoretically be stated against the Doe defendants. In that case, however, the plaintiff had amended the complaint to describe the Doe defendants as "individual members of the San Mateo Gang Task Force." (*Id.* at pg. 1020.) Dismissing the case in its entirety was error because the basis for sustaining the county's demurrer did not apply to the Doe defendants described. (*Id.* at pg. 1021.)

Here, appellants have not named or described any Doe defendants. It is impossible to analyze in the abstract whether there are any potential unnamed defendants who are not protected by section 5113's immunity provision. Accordingly, we take no position on whether appellants may file a valid new

9

complaint against defendants not named or described in the current action.

Because respondent, the only ascertainable defendant, is immune from liability for the claims in the first amended complaint under section 5113, summary judgment was properly granted, and the case was properly dismissed in its entirety.

DISPOSITION

The judgment is affirmed. Costs are awarded to respondent.

CERTIFIED FOR PUBLICATION.

VAN ROOYEN, J.*

We concur:

BALTODANO, Acting P. J.

CODY, J.

---

* Judge of the San Luis Obispo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Benjamin F. Coats, Judge

Superior Court of Ventura County
_____

Figueroa Law Group, James F. Scafide for Plaintiffs and Appellants.

Clinkenbeard, Ramsey, Spackman & Clark, LLP, Hugh Spackman and Cathy Anderson for Defendant and Respondent.